608 So.2d 981 (1992)
GREAT AMERICAN INSURANCE COMPANY
v.
Willard GASPARD, et al.
HANOVER INSURANCE COMPANY
v.
Willard GASPARD, et al.
Joseph B. INGRAM, and Karen Ingram, d/b/a Ingrams' Supermarket
v.
HANOVER INSURANCE COMPANY, et al.
The STANDARD FIRE INSURANCE COMPANY, et al.
v.
Will GASPARD, et al.
Murray J. INGRAM
v.
INSURANCE COMPANY OF NORTH AMERICA.
No. 92-C-0702.
Supreme Court of Louisiana.
November 30, 1992.
*982 Charles G. Tutt, Cook, Yancey, King & Galloway, Shreveport, for applicant.
David A. Hughes, Gist, Methvin, Hughes & Munsterman, Alexandria, for respondents.
HALL, Justice.
The sole issue presented in these consolidated cases is whether the liability insurance policy issued by State Farm Fire and Casualty Company to a tenant of a strip shopping center provides coverage for property damage sustained by the owner and other tenants of the shopping center when State Farm's insured intentionally set fire to the contents of his leased premises.
In denying coverage, State Farm relies on a provision in its policy which defines an "occurrence" to which the insurance applies as "an accident, ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured ..." State Farm takes the position that the property damage in this case was expected or intended by its insured when he intentionally and criminally set the fire, and such damage is excluded from coverage.
*983 The district court found that the insured's intention was only to destroy his own merchandise, he did not intend to destroy any surrounding buildings or property, and the intentional act exclusion did not apply. The court of appeal affirmed, finding that the conclusion of the trial court was not manifestly erroneous and that there was no evidence the fire was started with the intent to damage the property of third persons. 594 So.2d 981, 987, 988, 989 (La.App. 3d Cir.1992). We granted State Farm's writ application, 598 So.2d 343 (La. 1992), and now reverse the judgment against State Farm.

I
Five separate suits were filed by the owner of the shopping center, several tenants of the center, and their insurers. The alignment of parties to each suit and the procedural history of these cases is complicated and confusing, but is not at issue and need not be fully set forth here. Essentially, the cases proceeded as follows: Skip Converse, Inc., a contractor who recently built an allegedly defective fire wall in the center, and its insurer, American Alliance Insurance Company, were made defendants. State Farm Fire and Casualty Company, as liability insurer of Kelly's Fashions/Linda's Fashions, and its partners, was made a defendant along with its insureds. Judgments were rendered against Skip Converse, Inc., American Alliance and State Farm totaling several hundred thousand dollars. While the cases were on appeal, American Alliance settled with all plaintiffs and third-party plaintiffs, taking assignments of their claims against State Farm. Thus, the only remaining parties at interest are American Alliance and State Farm, and the only issue is whether State Farm provided coverage for the acts of its insured so as to entitle American Alliance to recovery from State Farm under contribution principles and its assignments from the other parties.

II
On November 1, 1986, Willard Gaspard and Linda Deselle opened a clothing store known as Kelly's Fashions or Linda's Fashions in a 25 by 82 foot space near the center of the Ingram Shopping Center in Tioga, Louisiana. On the evening of November 21, 1986, Gaspard set fire to the store and its contents. It was stipulated that the fire was intentionally set and accelerated through the use of gasoline which was poured in the portion of the shopping center occupied by Kelly's Fashions. The fire caused substantial damage to the shopping center and the surrounding stores. At the time of the blaze, State Farm had a liability insurance policy in effect covering Kelly's Fashions.
Two experts were qualified and accepted by the trial court concerning the fire and its cause. The chief of the Alpine Volunteer Fire Department, Robert Taylor, testified that he arrived at the scene less than three minutes after the call was received. Upon arrival, he observed heavy smoke coming from the entire shopping center and a glow in the area occupied by Kelly's Fashions. The roof had already begun to collapse. He concluded that the fire started with an accelerant and normally such a fire spreads very rapidly.
Donald Zwick was qualified as an expert in determining the origin of fires. He opined that the fire was intentionally set and that an accelerant was used. He estimated that between four to five gallons of accelerant were ignited to initiate the blaze. Additionally, his laboratory tests and the burn patterns revealed that while the gasoline was concentrated in the rear of the store, there was accelerant spread throughout the space and up to approximately fifteen feet from the front of the building. If the fire department had not responded so quickly and brought the fire under control, the large amount of accelerant would have caused the fire to spread quickly and in Zwick's opinion, the entire shopping center would have been destroyed.
At trial, Gaspard refused to testify, invoking the Fifth Amendment right against self incrimination. The trial judge, however, concluded that:
In this case the court finds that Mr. Gaspard's intention was only to destroy *984 his own merchandise, and he did not intend to destroy any surrounding buildings or property. There is no rational basis to belief [sic] that he intended to do anything other than destroy his own merchandise. There is no reason to believe that Mr. Gaspard intended to destroy the entire shopping center. There would be no basis at all for him to reason in that manner.
Therefore, the court held, the intentional act exclusion did not apply.
The court of appeal affirmed stating that the trial court was not manifestly erroneous and that there was no evidence that the fire was started with the intent to destroy the property of a third person.

III
State Farm's policy provides coverage for the following:
The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage, or personal injury caused by an occurrence to which this insurance applies.
"Occurrence" is defined as:
Occurrence means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured...
Thus, the question is whether the property damage to the building and the surrounding tenants was expected or intended by Gaspard, the insured, when he set the fire.
As with any exclusion in an insurance policy, the insurer bears the burden of proving that the intentional injury provision is applicable. Richard v. Old Southern Life Ins. Co., 502 So.2d 1168 (La.App. 3d Cir.1987). Exclusions must be narrowly construed and any ambiguity should be construed in favor of coverage. Breland v. Schilling, 550 So.2d 609 (La.1989); Snell v. Stein, 261 La. 358, 259 So.2d 876 (1972). The exclusion clause at issue is indeed ambiguous. Pique v. Saia, 450 So.2d 654 (La.1984); Breland, supra. "The exclusion `is designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will "pay the piper" for the damages.'" Breland, 550 So.2d at 610, quoting Transamerica Ins. Group v. Meere, 143 Ariz. 351, 694 P.2d 181, 186 (1984).
This court first addressed the meaning of the phrase "expected or intended from the standpoint of the insured" in Pique v. Saia, supra. The limitation was found to be ambiguous and to only exclude from coverage injuries that were intentional. The court went on to define what it meant by intentional injury:
An injury is intentional, i.e., the product of an intentional act, only when the person who acts either consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to the result. Bazley v. Tortorich, 397 So.2d 475 (La.1981); W. Prosser, Law of Torts § 8 (4th ed. 1971); Restatement (Second) of Torts, American Law Institute § 8A (1965).
Pique, 450 So.2d at 655.
The test enunciated in Pique was subsequently modified in Breland v. Schilling, supra. In Breland, the defendant struck plaintiff in the jaw with his fist during the course of a ball game. Unusually severe injuries resulted since the plaintiff's jaw was open at the time of the blow. The defendant, while intending only to inflict minor injuries, instead did extensive damage. The court rejected the reasoning that "intentional" as used in an insurance policy has the same meaning as "intentional" in tort law[1], worker's compensation[2] or *985 criminal law[3]. "The phrase `bodily injury... which is expected or intended,' emphasizes that an excluded injury is one which the insured intended, not one which the insured caused, however intentional the injury-producing act." Breland, 550 So.2d at 611. This interpretation makes it clear that not all injuries from an intended act will be excluded, but only those injuries that were intended. Additionally, the court reasoned that "from the standpoint of the insured" indicates that the subjective intent of the insured is the key and not what the average or ordinary reasonable person would expect or intend. The subjective intent of the insured, as well as his reasonable expectations as to the scope of his insurance coverage, will determine whether an act is intentional. An act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to occur. Breland, 550 So.2d at 613, quoting United Servs. Auto. Ass'n v. Elitzky, 358 Pa.Super. 362, 517 A.2d 982, 989 (1986). The court concluded by stating:
We hold, therefore, that when minor bodily injury is intended and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is also barred. But when minor injury is intended, and a substantially greater or more severe injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred. Whether a given resulting bodily injury was intended "from the standpoint of the insured" within these parameters is a question of fact. Such factual determinations are the particular province of the trier of fact ...
Breland, 550 So.2d at 614.
One of the first cases to apply the test outlined in Breland, was Menard v. Zeno, 558 So.2d 744 (La.App. 3d Cir.1990), writ denied, 561 So.2d 121 (La.1990). The plaintiffs were attempting to recover from their defendant neighbor's homeowner's insurer for psychological damages to their minor son. The damage resulted when the defendant's minor son, at knife point, forced the plaintiff's son to engage in anal intercourse. The homeowner's policy excluded recovery for injuries that were "expected or intended from the standpoint of the insured." The court noted that the injuries to the plaintiff's son were normal for the type of trauma received and not unexpected or fortuitous as the injuries in Breland. Therefore, the court held that the injuries were intended or the attacker knew they were substantially certain to result.
In Baugh v. Redmond, 565 So.2d 953 (La.App. 2nd Cir.1990), the defendant, a ball player, struck the plaintiff, an umpire, in the mouth and did serious damage to the plaintiff's teeth. The plaintiff was attempting to recover from the defendant's homeowner's policy which excluded damages that "were expected or intended by the insured". The court held that the punch was not meant to severely injure the umpire and was more in the nature of a gesture than a serious punch or blow. There was no intent to inflict serious bodily injury and the policy exclusion was not applicable.

IV
In order to determine whether the property damage that resulted in this case was expected or intended from the standpoint *986 of the insured and thus excluded under the policy, the test is whether at the time Gaspard set the fire he intended to damage the building and property of the other tenants or had a subjective belief that such a result was certain or substantially certain to follow. "The insured's subjective intent or expectation must be determined not only from the insured's words before, at the time of, and after the pertinent conduct, but from all the facts and circumstances bearing on such intent or expectation." Breland, 550 So.2d at 615 (Lemmon, J., concurring). Since Gaspard was advised to take the Fifth by his criminal defense attorney and refused to testify, there is no direct evidence or statement from him concerning his intent or what damages he believed would result from the fire. It becomes necessary to extract his intent from the facts and circumstances that appear in the record.
First, Gaspard used an estimated four to five gallons of accelerant in a space 25 feet by 82 feet. This was an excessive amount of gasoline if his only intent was to destroy his own merchandise. It resulted in a huge fire that the experts testified would have burned the shopping center to the ground if it were not for the quick response of the fire fighters. Since this was also a criminal act by Gaspard, it was to his advantage to inflict severe damage, even to the point of total destruction of the shopping center, to hamper or prevent any attempt to find the source of the fire and his criminal actions.
American Alliance claims the fact that Gaspard set the fire between a concrete wall and a supposed fire wall indicates he had no intent to damage the property of the other tenants. This theory is untenable. There was no evidence to indicate that Gaspard was aware of such a fire wall or had a belief that the walls would stop the spread of the type of fire he set. Additionally, a blaze that was set with as much accelerant as was used could spread by way of the roof or cause it to collapse, which it almost did. Finally, the damages that resulted from the fire were damages that are normal and would be expected to result. They were not like the damages in Breland, which were freak and fortuitous. The facts and circumstances in the record indicate that Gaspard intended to cause damage to the other tenant's property and the building, or he knew that such damage was substantially certain to follow his intentional act of setting the fire. Damage to the building and other tenants' property may not have been his motive, but it certainly was his intention.
The second factor considered in Breland is also fulfilled. No reasonable policy holder would believe that his insurance policy would provide coverage for his criminal act of arson. A liability insurer should not be expected to pay for the intentional criminal act of the insured which he knows will almost certainly result in serious damage to others. Since severe damage was intended to result from the blaze and severe damage resulted, coverage under the policy is barred. Breland, supra. The trial court was clearly wrong in finding otherwise.
When the insured set fire to his premises in the shopping center, with the intent to destroy his merchandise located on the premises, he either intended to cause damage to the building and the property of others surrounding him or knew that such damage was substantially certain to follow. Such damage was, therefore, expected or intended from the standpoint of the insured. State Farm's policy excludes coverage and bars recovery by American Alliance from State Farm as insurer of the arsonist.

V
The judgments of the trial court, affirmed by the court of appeal, against State Farm are reversed, and American Alliance's demands against State Farm are rejected, at the cost of American Alliance.
REVERSED AND RENDERED.
DENNIS, J., concurs with reasons.
WATSON, J., dissents, noting that this court substitutes its judgment of facts for the trial court and court of appeal where the error is not very clear.
*987 DENNIS, Justice, concurring.
I respectfully concur. The majority has reached the correct result as dictated by Pique v. Saia, 450 So.2d 654 (La.1984). However, I believe that discussion of Breland v. Schilling, 550 So.2d 609 (La.1989) is unnecessary to reach the same conclusion sought today and should be limited to cases involving acts not "expected," such as those arising from a fistic encounter during a baseball game as in Breland. In that sense, I diverge from the majority because I cannot subscribe to the notion that Breland has modified Saia for all purposes.
NOTES
[1] "The Restatement (Second) of Torts describes intended consequences as those which the actor knows are `substantially certain' to result from the act, whether the actor consciously desires those consequences or not. Restatement (Second) of Torts § 8 (4th ed. 1971)." Breland, 550 So.2d at 611. Additionally, the traditional intentional tort inquiry asks what an objective reasonable person would expect or intend to result from his act. Breland, supra.
[2] Bazley v. Tortorich, 397 So.2d 475 (La.1981) held that the definition of intent used in the area of torts would govern the exclusion for intentional acts by co-employees under the worker's compensation statutes.
[3] LSA-R.S. 14:10 states as follows:

Criminal intent may be specific or general: (1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.