627 So.2d 148 (1993)
Scott YOUNT and Royce Yount
v.
John MAISANO, Dr. Joseph
v.
Maisano, Individually and on Behalf of his Minor Son, William Maisano and William Maisano; Buelah Pommels, Individually and on Behalf of Her Minor Son, Charles Pommels and Charles Pommels and
United Services Automobile Association.
No. 93-C-1276.
Supreme Court of Louisiana.
November 29, 1993.
Rehearing Denied January 6, 1994.
*149 Timothy G. Schafer, Wade Dillard Rankin, Schafer & Schafer, New Orleans, for applicant.
Michael E. Wanek, Hulse, Nelson & Wanek, John A. Stewart, Jr., Lozes & Cambre, Felicien P. Lozes, New Orleans, Barry F. Viosca, Metairie, for respondent.
HALL, Justice.[*]
We granted certiorari in this case to determine whether defendant's homeowner's insurance policy, issued by United Services Automobile Association, provides coverage for injuries sustained by plaintiff as a result *150 of a beating inflicted by the insured when the policy contains an exclusion for bodily injury "expected or intended by the insured." The trial court found the exclusion did not apply and the court of appeal affirmed. We reverse.

I.
While vacationing in Destin, Florida on the evening of July 4, 1987, plaintiff Scott Yount (Scott), age 18, his brother, Louis Dean Yount, Jr. (Dean), age 20, and Peter Wanek (Peter), age 19, were walking along the beach when a bottle rocket struck Peter in the back, fell away and harmlessly exploded. Peter, angered by the incident, confronted a group of young men sitting on the beach, William Maisano (Billy), age 17, John "Bo" Maisano (Bo), age 20 and enlisted in the army, Charles "Casey" Pommels (Casey), age 17, and John Durnin (John), age 20 and also in the army. All of the young men, except Billy, had been drinking all day and were intoxicated. There was an exchange of unpleasantries between Casey and Peter, which erupted into a minor fight during which Casey and John hit Peter. Peter, Scott and Dean retreated and continued down the beach.
Peter, who sustained a bloody lip in the altercation, was still seething over the confrontation. Scott found a stick on the beach and gave it to Peter to use as a weapon if he wanted to get even with the other crowd. Peter, with stick in hand, returned a second time to confront the other group and resume the fight. Scott and Dean followed closely behind. As the two groups converged, John managed to disarm Peter, threw the stick to Bo, who used it to strike Peter. Scott, at that point, reacting to the situation, hit Bo in the face. There is some dispute in the record as to what occurred next. Scott testified that he then ran away, but Bo, Billy and Casey testified that Scott was tackled by Billy, and Bo was able to get in a few blows before Scott's retreat. No serious injuries resulted from this second altercation.
Scott, Dean and Peter continued down the beach and then stopped to rest on an overturned boat. At that time, Scott discovered that his keys and wallet were missing. He and Dean decided to search the area of the beach they had traversed in hope of finding the items. Coincidentally, Bo, Billy, Casey and John were also walking back to the area where the two earlier confrontations had occurred after they were unsuccessful in finding a friend's condominium. During this time, Bo discovered that the punch thrown by Scott during the second fight had broken one of his teeth, and as a result Bo was extremely angry.
Bo caught sight of Scott walking on the beach and his pace quickened. He jumped Scott from behind, without warning, and took him down. Scott was on his hands and knees as Bo punched and kicked him. Scott was unable to offer any resistance other than to put his hands over his head. Finally, Billy pulled Bo off Scott, making a comment to the effect that Scott had had enough.
Scott and Dean ran down the beach and met up with Peter. At that point, it was discovered that Scott was seriously injured. An ambulance was called and after receiving treatment that night at a Destin, Florida hospital for facial injuries, Scott was transported to New Orleans the next day for more treatment and surgery. His injuries consisted of multiple fractures of the jaw, broken and lost teeth, lacerations of the ears, contusions, abrasions and bruises. These injuries required his jaw be wired shut for six weeks.
Scott and his father, Royce Yount, filed suit against Bo Maisano, Billy Maisano, Dr. Joseph Maisano, as father of his minor son Billy, Casey Pommels, and Catherine Authement, as mother of her minor son, Casey.[1] Bo Maisano filed a third-party demand against United Services Automobile Association (USAA), his homeowner's insurer, for indemnity and a defense. USAA denied it provided coverage for this incident based on the intentional act exclusion in its policy that barred coverage for bodily injury "which is expected or intended by the insured."
The jury ruled in favor of plaintiffs, specifically finding in answer to an interrogatory, that the injuries to Scott were not intended *151 or expected from the standpoint of Bo. Judgment was originally rendered against Bo Maisano, Billy Maisano, Casey Pommels and USAA for $160,000 in damages. Motions for new trial were filed by all parties, after which the trial judge entered a new judgment finding only Bo Maisano and USAA liable to plaintiffs for $160,000.
USAA appealed, contending that it was not liable under its policy exclusion and complaining of prejudicial misstatements made by plaintiffs' counsel during closing arguments. Bo Maisano and his father answered the appeal seeking attorney's fees from USAA for failure to defend.[2] The court of appeal affirmed and remanded, with Judge Bowes dissenting, 616 So.2d 1382 (La.App. 5th Cir.1993). The court of appeal ruled that "there was a reasonable, factual basis for the jury's conclusion that Scott Yount's serious injuries were neither intended nor expected by the insured, Bo Maisano." The court also found that the comments made during closing arguments were cured by the jury instruction that argument of counsel is not evidence to be considered by the jury. Finally, since the court concluded that USAA was liable and had a duty to defend Bo Maisano, USAA was held liable to Bo Maisano for attorney's fees in the amount of $3,000 for the appeal, and the court remanded for a determination of the amount of attorney's fees due for the trial court proceedings.
In dissenting, Judge Bowes found that the testimony of Bo Maisano established that he wanted to get Scott, punched plaintiff twenty times and kicked him at least twice. From these actions, Bo should have expected that the injuries would result. Judge Bowes commented that the majority opinion defeats the purpose of the intentional act exclusion, since it allowed the insured to severely and intentionally beat the plaintiff, knowing that his insurance company would pay for the damages. Finally, Judge Bowes concluded by noting:
... this is not a case of one or two thoughtless (but powerful) blows inflicting much damage as was the case in Breland, Keathley [v. State Farm Fire & Casualty Ins. Co., 594 So.2d 963 (La.App. 3rd Cir. 1992)], and Baugh [v. Redmond, 565 So.2d 953 (La.App. 2d Cir.1990)] where it was held that the insured did not "intend nor expect" the damages that resulted. This is a case of a long, deliberate and intentional beating, resulting from anger and intention that was built up within over two previous earlier incidents and (½ hour), with the hope and expectation of inflicting severe damage on another human being as revenge.
Yount v. Maisano, 616 So.2d at 1389-90 (footnotes omitted).
We granted USAA's writ application, 620 So.2d 823 (La.1993).

II.
Policies should be construed to effect, not deny, coverage. Breland v. Schilling, 550 So.2d 609, 610 (La.1989); Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081 (La.1984); LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978). Any ambiguity in an exclusion should be narrowly construed in favor of coverage. Great American Insurance Company v. Gaspard, 608 So.2d 981 (La.1992); Breland, supra; Snell v. Stein, 261 La. 358, 259 So.2d 876 (1972). The "expected or intended" exclusion has been held to be ambiguous. Pique v. Saia, 450 So.2d 654 (La.1984); Breland, supra; Great American Insurance Co., supra. The insurer bears the burden of proving the applicability of the intentional injury exclusion. LA. Maintenance v. Certain Underwriters, 616 So.2d 1250 (La.1993); Great American Insurance Co., supra. The purpose of the intentional injury provision is "... to prevent an insured from acting wrongfully with the security of knowing that his insurance company will `pay the piper' for the damages." Breland, 550 So.2d at 610, quoting Transamerica *152 Ins. Group v. Meere, 143 Ariz. 351, 694 P.2d 181, 186 (1984); Great American Insurance Co., supra.
The exception, by its language, makes it clear that not all injuries resulting from an intentional act will be excluded, but only those injuries that were themselves intended. Breland, supra; Great American Insurance Co., supra. "The subjective intent of the insured, as well as his reasonable expectations as to the scope of his insurance coverage, will determine whether an act is intentional. An act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to occur." Great American Insurance Co., 608 So.2d at 985; Breland, supra, quoting United Servs. Auto. Ass'n v. Elitzky, 358 Pa.Super. 362, 517 A.2d 982, 989 (1986). As for the reasonable expectation of the insured regarding the scope of his coverage, this court has held that:
... when minor bodily injury is intended, and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is also barred. But when minor injury is intended, and a substantially greater or more severe injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred.
Breland, 550 So.2d at 614.
"The insured's subjective intent or expectation must be determined not only from the insured's words before, at the time of, and after the pertinent conduct, but from all the facts and circumstances bearing on such intent or expectation." Great American Insurance Co., 608 So.2d at 986 quoting Breland, 550 So.2d at 615 (Lemmon, J., concurring). Such determinations of subjective intent are factual and much discretion will be given to the trier of fact. Breland, supra.

III.
In order for coverage to be barred under the policy, Bo Maisano, the insured, must have desired the injury that he caused or believed that the injury Scott sustained was substantially certain to occur. Bo testified that he did not intend or consciously desire to inflict serious injuries to Scott and that he did not intend to break Scott's jaw. The plaintiffs contend that such a statement is sufficient, in and of itself, to allow coverage and defeat the exclusion. While the testimony of the insured as to his intent is one factor to be considered, it is not the only factor. We find, when examining all the facts and circumstances in the record, the trier of fact was clearly wrong in finding that the injury was not expected or intended by the insured.
Bo testified that he intended to take Scott down and continue the fight that had erupted twice before. The record reveals that after Scott fell to his hands and knees, Bo started hitting him with both fists anywhere from 10 to 15 times. He also kicked him at least twice, one of which was to the head. These kicks were of such power that Bo injured his foot. There was conflicting testimony as to the length of the beating, but it ranged anywhere from thirty seconds to two minutes. Bo was aware of the fact that he was hitting and kicking Scott and even that he kicked him in the face, but claims that he did not know what he was doing since he was in a "furious frenzy."
The witnesses to the beating recounted their impressions of Scott's condition during the incident. Billy, Bo's brother, testified that he was afraid that Bo was going to hurt Scott seriously and that is why he pulled Bo off Scott. He also stated that he was concerned for Bo, since he had blood all over his foot from kicking Scott. John testified that he believed the fight was getting out of hand when Bo kicked Scott, as the kicks were directed to Scott's face.
During this beating, Scott offered no resistance and only tried to protect himself by covering his head, albeit unsuccessfully. From an examination of all the facts and circumstances, there is no question that Bo intended or expected the type of injuries that resulted. The injuries that Scott suffered were not unusual or "freak" as were the injuries in Breland, supra, where this court *153 held the exclusion at issue did not apply.[3] Broken facial bones, lost teeth and lacerations are all either subjectively intended or expected injuries from repeated strikes to the face with the fists and feet. The lower courts were manifestly erroneous in finding to the contrary.
The second consideration in determining if the exclusion applies, the reasonable expectation of the insured as to the scope of his insurance coverage, weighs against coverage. A reasonable insured could not reasonably expect his insurance policy to pay for the consequences of such a fierce and brutal beating of another individual. It is clear in this case, where defendant actively set out and attacked plaintiff and beat him with repeated blows and kicks, that he intended or expected to inflict serious injury and, in fact, serious injury did result.
We hold that where an insured sets out to commit a battery on another individual and repeatedly strikes him in the face with both fists and kicks him repeatedly in the face, the resulting broken facial bones and other facial injuries are either intended by the insured or the insured must know that such injuries are substantially certain to result. Therefore, the policy exclusion bars recovery against USAA.

IV.
Since we find that the policy exclusion is applicable, we do not reach the issue of the alleged improper comments made during the closing arguments. However, our holding that the intentional injury exclusion applies does not pretermit the question of whether USAA is liable for attorney's fees for its failure to defend its insured, Bo Maisano.
Generally the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. The insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. American Home Assurance Company v. Czarniecki, 230 So.2d 253 (La.1969); Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987).
Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend the suit brought against its insured. Benoit v. Fuselier, 195 So.2d 679 (La.App. 3d Cir.1967); American Home Assurance Company, supra.
We agree with the court of appeal that the allegations of the petition do not unambiguously exclude coverage. It is unclear from the face of the petition alone whether the injuries that resulted were intended by the insured or whether he knew they were substantially certain to result. Bo Maisano made a demand on USAA for a defense and it was refused. Therefore, USAA is liable for its insured's expenses in defending the suit. We affirm that part of the judgment of the court of appeal which awarded Bo Maisano $3,000 in attorney's fees for the appeal and remanded the case to the district court for a determination of attorney's fees due for the trial.

V.
That part of the judgment of the trial court, as affirmed by the court of appeal, awarding damages against United Services Automobile Association is reversed. That part of the judgment of the court of appeal holding USAA had a duty to defend Bo Maisano, awarding attorney's fees and remanding to the district court for a determination *154 of additional attorney's fees, is affirmed. Costs are assessed to USAA.
REVERSED IN PART, AFFIRMED IN PART AND REMANDED.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Justice ORTIQUE was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] John Durnin, an out of state resident, was not named as a defendant in the suit.
[2] Plaintiffs also answered the appeal arguing that the other defendants were liable and should not have been dismissed. They also asked for an increase in the damage award. The court of appeal found that plaintiffs' answer was not the correct mechanism to argue the dismissal of the individuals who were not parties to the appeal. If plaintiffs wanted a review of that judgment they should have filed their own appeal. The court also found no error with regard to the damage award. We denied plaintiffs' writ application, 620 So.2d 823 (La.1993).
[3] In Breland, the defendant hit plaintiff in the jaw with his fist during a softball game. Since the plaintiff's jaw was open at the time, severe injuries resulted from the blow. The defendant only intended to inflict minor injuries and the injuries were shown to be "freak." Therefore, we held that the insured did not subjectively intend the injuries that he caused and did not intend to inflict any type of serious injury. See also Baugh v. Redmond, 565 So.2d 953 (La.App. 2d Cir.1990).