659 So.2d 515 (1995)
Myra B. LEWIS, et al.
v.
Alexander HAYES, Jr.,
Stephanie V. BUTLER, etc.
v.
AUDUBON INSURANCE COMPANY, et al.
Nos. 94-CA-2511, 94-CA-2512.
Court of Appeal of Louisiana, Fourth Circuit.
July 26, 1995.
*517 Sessions & Fishman, James Ryan, III, Peter S. Title, New Orleans, for appellant.
Sylvestri & Massicot, Frank A. Silvestri, John Paul Massicot, Anthony L. Marinaro, New Orleans, for appellees.
Before BARRY, CIACCIO and MURRAY, JJ.
CIACCIO, Judge.
In these consolidated suits for damages for wrongful death, appellant, USAA, appeals from a jury verdict rendered in favor of plaintiffs. For the following reasons, we reverse the trial court's judgment which incorporates the jury verdict, and we dismiss plaintiffs' suit.

FACTUAL BACKGROUND
These suits arise out of a shooting incident which occurred on January 24, 1990 in the kitchen of the premises located at 2544 Dumaine Street in New Orleans. On this date, Alexander N. Hayes, Jr. and his stepbrother Gregory Lewis became engaged in an argument about credit card charges, which resulted in Hayes fatally shooting Lewis in the chest and abdomen.
Alexander Hayes was charged at the scene with aggravated battery. However, that charge was subsequently upgraded after Lewis died a short time after the shooting. Hayes eventually pled guilty to the charge of manslaughter, and he was sentenced to eight years, suspended, five years active probation, and was ordered to pay restitution to Lewis' widow, Myra Lewis.
On September 6, 1990, Myra Lewis, individually and on behalf on her minor child, Gavin Lewis, filed suit against Alexander Hayes for the wrongful death of her husband, Gregory Lewis. The petition was subsequently amended to include as defendants Audubon Insurance Company, on the grounds that Audubon had in effect a homeowners' policy insuring Hayes and the Dumaine Street residence. Hayes answered this petition, and filed a cross-claim against United Services Automobile Association (USAA), alleging that USAA had issued a policy of homeowner's insurance which covered Hayes. The policy was issued to his wife, Dr. Cheryl LeBlanc, who resided at 5125 Perlita Street. Hayes was a named insured on the policy. The policy, which had a $300,000.00 limit of liability, excluded coverage for bodily injury or property damage "which is expected or intended by the insured." USAA denied liability based on this exclusion clause in the policy.
On November 14, 1990, Stephanie Butler filed suit individually and on behalf of her minor child Gregory J. Lewis, Jr., for the wrongful death of Gregory Lewis. Named as defendants in this suit were Alexander Hayes, Audubon Insurance Company, USAA, and Zeta Hayes as the administrator of and the Estate of Greta Hayes Richard, the owner of the residence at 2455 Dumaine Street. This suit was subsequently consolidated with the Lewis suit.
By order of the trial court dated May 24, 1993, plaintiffs dismissed their claims against Audubon Insurance Company, Alexander Hayes, the Estate of Greta Hayes Richard and Zeta Hayes as representative of the Estate with prejudice, reserving their rights to proceed against the remaining defendant, USAA. This matter proceeded to trial by jury solely against USAA on March 16-17, 1994. Following trial, the jury rendered a verdict in favor of plaintiffs and against USAA, specifically finding in answer to an interrogatory that the death of Lewis was not intended by Hayes.
The jury assessed damages in plaintiffs' favor in the amount of $557,000.00. The trial court subsequently rendered judgment against USAA in the amount of $300,000.00, the full limits of its policy. This amount was prorated by the court as follows:

Myra Lewis $142,440.00
Myra Lewis on behalf of
Gavin Lewis $ 94,410.00
Stephanie Butler on behalf
of Gregory Lewis, Jr. $ 63,150.00

USAA filed a motion for judgment notwithstanding the verdict or alternatively for new trial, which was denied by the trial court. On motion of plaintiffs, the trial court amended the judgment to reflect the amounts of medical and funeral expenses of *518 the decedent, as well as the medical expenses incurred for the treatment of Gavin Lewis.
USAA now appeals from this judgment on the basis of several assignments of error. Because we find merit in the first issue raised by USAA, we do not reach appellant's remaining assignments of error.

DISCUSSION
Appellant's first assignment of error is two-fold: first, that the trial court's instruction to the jury on the issue of intent and the intentional exclusion in its policy was erroneous and secondly, that the jury finding that Hayes did not intend to seriously injure or kill Lewis was also manifestly erroneous. We agree.
The USAA homeowner's policy covering Alexander Hayes contains an exclusion clause which provides in pertinent part:

SECTION 11EXCLUSIONS
1. Coverage EPersonal Liability and Coverage FMedical Payments to Others do not apply to bodily injury or property damage:
a. which is expected or intended by the insured;
(Emphasis in the original).
Generally an insurer must establish that an exclusion for intentional injury is applicable in a particular situation. Yount v. Maisano, 627 So.2d 148, 151 (La.1993); Great American Ins. Co. v. Gaspard, 608 So.2d 981, 984 (La.1992). An exclusion must be narrowly construed and any ambiguity should be construed in favor of coverage. Great American Ins. Co. v. Gaspard, 608 So.2d at 984; Breland v. Schilling, 550 So.2d 609, 610 (La.1989).
The Louisiana Supreme Court in Breland considered the application of an exclusion in a homeowner's policy which is almost identical to the clause in the USAA policy, and stated as follows:
The purpose of the intentional injury exclusion is to restrict liability insurance coverage by denying coverage to an insured in circumstances where the insured acts deliberately and intends or expects bodily injury to another. The exclusion is designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will "pay the piper" for the damages.
The purpose of liability insurance, on the other hand, is to afford the insured protection from damage claims. Policies should be construed to effect, not deny, coverage. And an exclusion from coverage should be narrowly construed. (Citations omitted.)
In Breland, the court rejected the theory that "intentional" as used in an insurance policy has the same meaning as "intentional" in tort law, worker's compensation or criminal law. "The phrase `bodily injury... which is expected or intended,' emphasizes that an excluded injury is one which the insured intended, not one which the insured caused, however intentional the injury-producing act." Breland, 550 So.2d at 611. In seeking to determine the intent of the insured, not all injuries which flow from an intentional act will be construed to be intended by the insured. Rather, the Breland court found that the subjective intent of the insured must be examined to determine the application of the exclusion clause in the policy.
The subjective intent of the insured, as well as his reasonable expectations as to the scope of his insurance coverage, will determine whether an act is intentional. An act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to occur. Breland, 550 So.2d at 613; Great American Ins. Company v. Gaspard, supra, 608 So.2d at 985.
As for the reasonable expectation of the insured regarding the scope of his coverage, the Supreme Court has stated:
... when minor bodily injury is intended by the insured, and such results, the insured is barred from coverage. When serious bodily injury is intended and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is also barred. But when a minor injury is intended, and a *519 substantially greater or more severe injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred.
Breland, 550 So.2d at 614.
In the present case, the trial court instructed the jury on intent as follows:
Our law has defined the term intended as it is used in the insurance policy. The word intended implies that the mind is directed to some definite accomplishment or end. A result which is intended means one which is planned, contemplated or studied. Therefore, the exclusion should be applied only when the insured had a reasonable opportunity for adequate reflection on the consequences before acting in the manner which caused damages.
USAA objected to this instruction and to the failure of the trial court to give any of its proposed special charges on the issue of intent to the jury. Following their deliberations, the jury returned with the following answers to interrogatories:
Is Alexander Hayes liable for the death of Gregory Lewis?
Yes.
Did Alexander Hayes intend to seriously injure or kill Gregory Lewis?
No.
We find that the jury charge given by the trial court regarding the issue of intent to be erroneous. The trial court's instruction that for the exclusion to apply, the jury had to conclude that Hayes "planned, contemplated or studied" the results of his actions, that he "had a reasonable opportunity for adequate reflection on the consequences before acting," is not supported by the definition of intent set forth in the recent line of jurisprudence on this issue. Breland, Great American Ins. Co., and Yount v. Maisano, supra. The trial court failed to instruct the jury based on the Breland line of cases that an injury is intended or expected when the perpetrator desires the results of his action or he believes that the results are substantially certain to occur. Rather, the jury instruction given by the trial court erroneously implied that for Hayes' actions to be considered intentional, he must have planned or premeditated the shooting and he must have had an opportunity to reflect on the consequences of his actions. We find that the instruction given by the trial court to be misleading and prejudicial, and improperly influenced the jury's verdict in plaintiffs' favor.
Failure to inform the jury of an essential legal principal constitutes reversible error. Gonzales v. Xerox Corp., 320 So.2d 163, 164-65 (La.1975). However, such an error does not require remand; this Court must review the record and make a factual determination of plaintiffs' claims. Id., 320 So.2d at 166.
Although he had been dismissed as a party defendant, Alexander Hayes testified at trial regarding the facts and circumstances surrounding the shooting. Hayes testified that in January of 1990, he was employed as a security driver-guard for Wells Fargo, although he admitted he had been on suspension since December 9, 1989. Hayes stated he carried a gun in connection with his employment and that he had received firearms training for handguns and shotguns prior to his employment. Hayes stated that he personally owned a .38 caliber revolver which he carried while he was not on duty with his employer.
Hayes stated that in January of 1990 he lived with his wife, Dr. Cheryl LeBlanc at 5125 Perlita Street, although he admitted that his wife had filed a petition for separation on October 4, 1989 alleging that the couple had separated on September 23, 1989.
Hayes testified that on January 24, 1990, he went to his late mother's home at 2544 Dumaine Street with his step-father, Francisco Richard. His mother had died ten days earlier. Hayes stated that Gregory Lewis and Hayes' sister, Zeta Hayes, were also at the house. Zeta left the house for school, and Richard went to the backyard of the house to paint. Hayes and Lewis remained in the kitchen. Lewis was cooking with an iron skillet at the stove. Hayes was seated on a stool at the kitchen counter looking for telephone numbers in the phone book. His *520 revolver, which was contained in a holster, was placed on the counter next to him.
Lewis began to accuse Hayes of making charges on their sister's credit card, which Hayes denied. Hayes stated that Lewis became angry, but Hayes ignored him and continued to look in the phone book. Hayes testified that when he looked up, Lewis had the skillet in his hand and was leaning across the counter and coming at him with it.
Hayes then testified that he "grabbed for" his gun as he was falling over backwards from the stool and that the gun "fell out of its holster." He stated that he did not remember what happened next, but acknowledged that the gun discharged twice, striking Lewis, who was on the other side of the counter a few feet away. Hayes "guessed" he squeezed the trigger, although he did not remember actually doing so, but denied aiming the gun at his brother. He stated that he did not intend to kill his brother.
Hayes testified that after the shooting, he went out to the yard to get Richard. Richard brought Lewis to the hospital, and Hayes remained at the house. He stated he was not aware that the shots had been fatal until he was informed by police officers after his arrest. Hayes admitted pleading guilty to manslaughter as a result of his actions.
Francisco Richard testified at trial that he was in the yard of the house on the afternoon in question and heard loud arguing coming from the kitchen. He then heard two shots, which he described as "bam bam" in rapid succession. Hayes exited from an alley next to the house holding the gun in his right hand. Richard asked him what happened, and Hayes replied, "Greg made me shoot him."
Dr. Cheryl LeBlanc testified that she received a telephone call at work on the afternoon of January 24, 1990 from Hayes who told her, "Come quick, Gregory made me shoot him."
An NOPD officer who was present at the scene following the shooting, Officer Pascal Saladino, testified that he advised Hayes of his Miranda rights and that Hayes told him he had shot Lewis following an argument. Officer Saladino stated that when he asked Hayes why he shot Lewis twice, Hayes told Saladino "something kind of foolish like he [Lewis] was still standing."
In order to determine whether the result in this case was expected or intended by the insured and thus excluded under the policy, the test is whether at the time Hayes picked up his gun from the counter he intended to seriously injure or kill Lewis or had a subjective belief that such a result was certain to follow. Great American Ins. Co. v. Gaspard, 608 So.2d at 985-986. The insured's subjective intent or expectation must be determined not only from the insured's words before, at the time of, and after the pertinent conduct, but from all the facts and circumstances bearing on such intent or expectation. Great American Ins. Co., 608 So.2d at 986 quoting Breland, 550 So.2d at 615.
Plaintiffs contend that Hayes' testimony that he did not intend to shoot his brother is sufficient to allow coverage under the USAA policy. Hayes testified that the shooting was accidental. However, while the testimony of the insured as to his intent is one factor to be considered, it is not the only factor. Yount v. Maisano, supra, 627 So.2d at 152.
Plaintiffs further contend that USAA failed to carry its burden of proving that Hayes intended to kill or seriously injure his brother when he reached for the gun, and that the jury determination that the shooting was unintentional is not manifestly erroneous. Plaintiffs point to the testimony of Ronald Vause, a court-qualified expert in firearms, who stated that many shooting deaths are accidental and not intended by the perpetrators, and that Hayes' shooting of Lewis was accidental. Plaintiffs argue that the jury could have reasonably concluded from the evidence that the gun discharged by accident or that Hayes reacted in self defense.
We find, when examining all the facts and circumstances in the record, the trier of fact was clearly wrong in finding that the serious or fatal injury in this case was not intended by the insured. That the serious bodily injury and subsequent death which Hayes inflicted on Lewis was either *521 "expected or intended by the insured" may be inferred from the circumstances surrounding the shooting.
Hayes, in an effort to escape injury from a skillet in the hands of his brother, picked up a loaded .38 caliber revolver, pulled it from its holster, and pointed it at point-blank range in the direction of Lewis, causing it to discharge two times. Following the shooting, Hayes was charged with aggravated battery which was subsequently upgraded to a charge of second degree murder after Lewis' death. Hayes eventually pled guilty to the crime of manslaughter, a violation of LSA-R.S. 14:31, which provides in pertinent part:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.
The crime of manslaughter requires the presence of specific intent to kill or inflict great bodily harm. State v. Harris, 527 So.2d 1140 (La.App. 1st Cir.1988). In the criminal code, specific intent is defined as the "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Hayes pled guilty to this crime and was sentenced accordingly. This fact is certainly evidence of an admission by Hayes that he possessed the requisite specific intent to kill or inflict serious bodily harm on Lewis.
Further, the record contains substantial additional evidence that Hayes by his actions intended the results which occurred in this case. The expected results from the discharging of a firearm are, for the most part, serious bodily injury or death. Hayes was trained in the use of firearms and knew the effects of using his revolver. From an examination of all the facts and circumstances, there is no question that Hayes intended or expected the type of injuries that resulted. Lewis' death was not unusual or "freak" as were the injuries in Breland, supra, where the court held that the exclusion at issue did not apply. Rather, serious bodily injury or death are exactly the type of injury which are expected in this situation. When Hayes picked up the loaded revolver and fired it at point-blank range two times in Lewis' direction, he either intended to kill or seriously injure Lewis or knew that such damage was substantially certain to follow from his actions.
Although Hayes contends on appeal that the jury could have found that he acted in self-defense, Hayes did not plead self-defense, nor did he present any evidence at trial on this theory. Rather, Hayes testified at trial that his brother's possession of the skillet caused him to grab the gun, but the shooting of the gun was accidental. In any event, plaintiff's own expert, Ronald Vause, testified that Hayes' use of force under the circumstances was excessive, and the jurisprudence is settled that an exclusionary clause for an intentional act in an insurance policy applies where the insured uses greater force than reasonably necessary to protect himself. Brasseaux v. Girouard, 269 So.2d 590 (La.App. 3rd Cir.1972), writs denied, 271 So.2d 262 (La.1973).
We also fail to find sufficient evidence in the record that the shooting of Lewis was accidental. This is not a situation where the gun was being cleaned or transported and accidently discharged. Alexander Hayes, during an argument with his brother and on seeing his brother with a iron skillet, picked up the revolver, pointed it in the direction of his brother who was only a few feet away and caused the weapon to discharge two times. Given this conduct, any reasonable person would have to conclude that Hayes intended to fire the gun and that serious bodily injury or death were almost certain to result from such a dangerous course of action.
We conclude, therefore, Hayes' action in fatally shooting his brother was certainly a deliberate and intentional act, and the physical damage is such a natural consequence of such an action, that any perpetrator must be held to realize that damage will result. We find that the evidence in the record is sufficient to show that the resultant injury to *522 Lewis was "expected or intended by the insured" so as to exclude coverage under the applicable insurance policy. The jury was clearly wrong in concluding otherwise.

CONCLUSION
Accordingly, the judgment of the trial court which incorporates the jury verdict and awards damages against United Services Automobile Association is reversed. Judgment is hereby rendered in favor of USAA, dismissing plaintiffs' claims against them, with prejudice and at plaintiffs' costs.
REVERSED AND RENDERED.
BARRY and MURRAY, JJ., concur with reasons.
BARRY, Judge, concurring with reasons.
The May 3, 1994 judgment provides that the trial court partially granted plaintiffs' motion to amend the judgment in order to add additional medical and funeral expenses. The trial court had no authority to do so under La.C.C.P. art. 1951 which provides for correction of calculation errors and alteration of phraseology, but not substance. However, plaintiffs filed a motion to amend and/or for a partial new trial. The trial court's changes were allowed pursuant to the partial granting of a motion for new trial.
I agree that the instruction given to the jury was misleading, prejudicial, contributed to the jury's verdict, and constituted reversible error. There is no reason to consider whether the jury was manifestly wrong. This Court must review the record and make its own determination as to plaintiffs' claims.
Hayes' guilty plea to manslaughter should not bear on the intent issue under the policy's exclusion.
Hayes' decision to fire the gun twice is within the exclusion for bodily injury "which is expected or intended by the insured."
I therefore concur.
MURRAY, Judge, concurring in the result.
I concur in the result reached by the majority.
The trial court's jury instruction with regard to the term intent as it is used in the insurance policy is incomplete. While the instruction given is a correct recitation of the definition of intent expressed by this court in Langlois v. Eschet, 378 So.2d 189, 190 (La. App. 4th Cir.1979), and is appropriate to this case, it is misleading because it does not state fully the law on intent with regard to this type of exclusionary clause.
The jury also should have been charged, as requested by the insurer, that an injury is "expected or intended" when the actor desired the results of his act or believed those results were substantially certain to follow from what he did. Breland v. Schilling, 550 So.2d 609, 612 (La.1989).
Since the jury instruction was incomplete it failed to properly inform the jury of an essential legal principle, and was reversible error. See, Celestine v. Union Oil Co. of Calif., 636 So.2d 1138 (La.App. 3rd Cir.1994).
This court must review the record to make a factual determination of the plaintiff's claims. Gonzales v. Xerox Corp., 320 So.2d 163, 164-166 (La.1975).
I agree that the insurer has borne its burden of proving that Alexander Hayes' shooting of Gregory Lewis was intentional so as to preclude coverage. It has been recognized that a person may react instinctively, in self-defense, but negligently by using excess force or because the perceived danger was not real. Under those circumstances the actor might be said not to have intended the injury. See, Langlois, 378 So.2d at 191. That is not the situation in this case.
Mr. Hayes testified that he did not remember what happened after he reached for his gun and backed away from the counter where he was sitting. There are no surviving witnesses. Based on the evidence presented, the most reasonable inference is that Mr. Hayes intended to shoot Mr. Lewis. It would be an abuse of discretion to consider other possibilities, for which no evidence was presented, to supply another explanation.