McClendon, j.
IgPlaintiffs, Ernie Wayne Feierabend, individually and as the executor of the Succession of Emmilee Gordon Feierabend, and Paula Antonia Gordon (the decedent’s adult daughter), and defendant, James Wesley Starns, appealed a summary judgment dismissing Shelter Mutual Insurance Company (Shelter), based on an intentional acts exclusion in the policy issued to Mr. Starns’ parents. After a thorough review of the record before us, we affirm.
The coverage issue here arose from a tragic fatal shooting. It is undisputed that Mr. Starns shot Mrs. Emmilee Gordon Feierabend three times with a .38 caliber revolver. The dispute is over the intentions underlying his actions. After shooting her, he removed her body from the car and drove to his home. His parents called 911, and told the operator where Mrs. Feierabend was located. The police were dispatched and found Mrs. Feierabend’s body at the scene of the shooting. Mr. Starns was arrested and charged with second-degree murder. Despite his claim of self defense, Mr. Starns was convicted of manslaughter.
Mr. Starns was 19 at the time of the incident, and approximately six feet and three inches tall. Mrs. Feierabend was 52. After his arrest, but before trial, Mr. Starns gave a statement to the police. In his statement, Mr. Starns claimed that he met Mrs. Feierabend at a local mall. He agreed to meet her again the next night at the same mall. The two met the next night and left the mall together in Mrs. Feierabend’s car. They drove to a secluded spot. Mr. Starns asserted that Mrs. Feierabend wanted to have sex, but he did not. She pointed a gun at him and told him to take off his clothes. Mr. Starns stated that he “grabbed the gun from her and [he] shot her.” The gun was later determined to belong to Mrs. Feierabend. He remembered that |she “shot her in the arm trying to get away from her ....” When she leaned toward him, he “pulled the trigger again,” but he did not know where he shot her. He told the police that he did not mean to shoot her. Afterward, he put the gun in his pants, removed her from the car, and drove home. He was upset and told his parents. When asked during the statement about which hand Mrs. Feierabend used to hold the gun, Mr. Starns replied that she held the gun “in the right hand, she was holding it like both hands.” He then “grabbed the gun out of her hands and shot her,” but again he denied that he meant to kill her. He further explained that he “grabbed the barrel of it and yanked it out of her hands.” He repeated that he “yanked the gun out of her hands and bam [he] shot her with it.” He thought that he shot her in the shoulder because he saw blood in that area. After he shot her, she smiled at him and reached toward him, so he “just pulled the trigger again” because he wanted to get away. When asked how many times he shot her, he said, “I don’t know if it was twice or 3 times.” When asked why he didn’t stop at a payphone and call the police, he replied, “I was thinking at the time that if I go to a payphone ... [p]eo-ple are gonna see blood on my pants and freak out or something ....”[1]
*1198 Mrs. Feierabend’s family sued Mr. Starns for damages. Shelter, as the liability insurer of Mr. Starns’ parents, intervened. Subsequently, Shelter filed a motion for summary judgment based on policy language that excluded from coverage any bodily injury “expected or intended” by the insured. Shelter also asked for sanctions against Mr. Starns for refusing to comply with a court order compelling discovery. Shelter argued that Mr. 14Starns’ pre-conviction denial of an intention to kill was not enough to rebut Shelter’s showing, especially in light of Mr. Starns’ refusal to cooperate in discovery after his conviction was final. After a hearing, the trial court granted a summary judgment dismissing Shelter from the suit.
Plaintiffs and Mr. Starns appealed. The appellants assert that the trial court erred in finding that the injuries inflicted on Mrs. Feierabend were intended or reasonably expected by Mr. Starns.[2]
POLICY PROVISIONS AND APPLICABLE LAW
The insurance policy in this case excluded “bodily injury ... expected or intended by an insured.” “Bodily injury” was defined as “bodily injury, sickness or disease, and includes care, loss of services, and resulting death.”
The insurer bears the burden of proof on the issue of whether an exclusion applies. Exclusions must be narrowly eon-strued and any ambiguity should be resolved in favor of coverage. Great American Insurance Company v. Gaspard, 608 So.2d 981, 984 (La.1992).
In Breland v. Schilling, 550 So.2d 609, 610 (La.1989), the Louisiana Supreme Court reviewed similar policy language in a case concerning an insured’s punch to the victim’s open jaw, which broke said victim’s jaw. The supreme court first noted that the purpose of liability insurance is to offer protection to the insured, and the intentional injury exclusion is added to prevent an insured from acting in a wrongful manner and expecting his insurer to cover any resulting damage. Breland, 550 So.2d at 610.- After reviewing the jurisprudence, the court interpreted the policy exclusion for 1 R“bodily injury or property damage which is either expected or intended from the standpoint of the Insured,” to mean that: *1199 Breland, 550 So.2d at 610 & 614. Finding that it was reasonable to conclude that the injury in Breland was more severe than the insured intended, the supreme court held that coverage was not barred. Breland, 550 So.2d at 614. In a concurring opinion, Justice Harry Lemmon noted that the insured’s subjective intent should be extracted from all the facts and circumstances. Breland, 550 So.2d at 615.
*1198 when minor bodily injury is intended, and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is also barred. But when minor injury is intended, and a substantially greater or more severe injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred. (Emphasis added.)
*1199 In Great American Insurance Company, the supreme court reviewed the same exclusionary language at issue in Breland to determine coverage in a case of arson. The supreme court reiterated the Breland interpretation of when the exclusion would apply and stated that an “act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to occur.” Great American Insurance Company, 608 So.2d at 985. The supreme court also adopted Justice Lemmon’s language from Breland and held that “ ‘[t]he insured’s subjective intent or expectation must be determined not only from the insured’s words before, at the time of, and after the pertinent conduct, but from all the facts and circumstances bearing on such intent or expectation.’ ” Great American Insurance Company, 608 So.2d at 986, quoting Breland, 550 So.2d at 615. Although the insured in Great American Insurance Company invoked his Fifth Amendment rights and refused to testify, the court, after reviewing the |fitotality of the facts and circumstances of the case, found that the insured, who had set fire to his building, knew that damage to other buildings “was substantially certain to follow. Such damage was, therefore, expected or intended from the standpoint of the insured.” Great American Insurance Company, 608 So.2d at 986.
In reaching its conclusion, the supreme court also considered whether a “reasonable policy holder would believe that his insurance policy would provide coverage for his criminal act of arson.” Great American Insurance Company, 608 So.2d at 986. The court found that “severe damage was intended” by the arsonist, and the liability insurer could not be excepted to cover the “severe damage” that resulted, including the destruction of buildings other than the insured’s. Id.
In Yount v. Maisano, 627 So.2d 148, 150 (La.1993), the supreme court confronted the same language as the Shelter exclusion for bodily injury “ ‘expected or intended by the insured.’ ” The Yount court had to determine whether the language excluded coverage for an insured who had repeatedly hit and kicked the victim in the face causing severe injuries. Yount, 627 So.2d at 149-50. The insured “testified that he did not intend or consciously desire to inflict serious injuries to [the victim] and that he did not intend to break [the victim’s] jaw.” Yount, 627 So.2d at 152. However, despite the insured’s stated intent, the court noted that the insured’s testimony was only “one factor to be considered .... ” Id. Again quoting Justice Lemmon’s language, the supreme court stated that the determination of the insured’s subjective intent must also include a consideration of the totality of the facts and circumstances surrounding the insured’s actions, intent, and expectations. Id.
17After its review of all the facts and circumstances and the Breland interpretation of how the exclusion is applied in particular scenarios, the Yount court found that when an insured viciously beats and repeatedly kicks a victim, the severe damages that result “are either intended by the insured or the insured must know that such injuries are substantially certain to result.” Yount, 627 So.2d at 153. As another basis for barring coverage, the court also found that the insured “could not rea *1200 sonably expect his insurance policy to pay for the consequences of such a fierce and brutal beating ....” Id.
A motion for summary judgment must be granted if no genuine issue of material fact remains, and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B. The issue is never whether the mover will prevail at trial. Summary judgment is warranted only when reasonable minds must inevitably conclude that the mover is entitled to summary judgment. Bilbo v. Shelter Insurance Company, 96-1476, pp. 3-4 (La.App. 1 Cir. 7/30/97), 698 So.2d 691, 693, writ denied, 97-2198 (La.11/21/97), 703 So.2d 1312, “When a motion for summary judgment is made and supported as provided [by LSA-C.C.P. art. 967 A], an adverse party may not rest on the mere allegations or denials of his pleading, but his response.... must set forth specific facts showing that there is a genuine issue for trial.” LSA-C.C.P. art. 967 B. A failure to do so, will result in the grant of the motion for summary judgment. Id. Summary judgment is reviewed de novo. Bilbo, 96-1476 at p. 3, 698 So.2d at 693.
ANALYSIS
The insured’s statement that he did not intend to kill Mrs. Feierabend is not the only factor to consider. In our de novo review, we also considered the totality of the essential and material facts and circumstances surrounding |sthe actions, intentions, and expectations of the insured that were either undisputed or set forth in Mr. Starns’ own statements.
Based on our review of the record before us, we find that reasonable minds could not disagree over the insured’s reasonable expectation of what was substantially certain to occur based on his actions. Reasonable minds must inevitably conclude that the insured, by admittedly shooting Mrs. Feierabend more than once from a relatively short distance after gaining control of the gun, and by leaving her at the scene without summoning medical care or the police, intended to cause Mrs. Feierabend a severe, even extreme injury, including the possibility of death. Based on the clear interpretation of the exclusion afforded by the holding in Breland, “[w]hen a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is ... barred.” Breland, 550 So.2d at 614 (Emphasis added.) Secondly, we find that reasonable minds must also inevitably conclude that Mr. Starns could not have reasonably expected Shelter to pay for his shooting someone three times and leaving the victim at the scene unattended, which acts resulted in the death of the victim.
Thus, we find that Shelter met its burden of proof on the motion for summary judgment, and that appellants did not come forth with evidence necessary to show that a genuine issue of material fact remained as to Mr. Starns’ intention or reasonable expectation of what was substantially certain to occur based on his actions. After a motion for summary judgment is shown to be properly supported, “an adverse party may not rest on the mere allegations or denials ...: ”
Although we find that the acts here fit clearly within Breland’s specifically listed categories of when coverage is available or barred, the [9result here would be the same under the more general principles announced in Breland.
The record does not support appellants’ argument on appeal that Mr. Starns intentionally placed all of his shots in the area of the victim’s shoulder; arguably an area less likely to produce severe injury or death. The record does prove that Mr. Starns gained control of the gun and ad *1201 mittedly shot the victim at least twice, and thought he may have pulled the trigger a third time. Multiple shots to the body of an unarmed woman from a relatively short distance, coupled with Mr. Starns’ decision to remove her from the car and not to summon the police or medical care, shows that he must have expected that severe injuries, including death, were substantially certain to result.
As in Great American Insurance Company and Yount, this case arises from acts that are more serious and extreme than those at issue in Breland (punch to open jaw resulting in severe injury), Bilbo (insured punched the victim once, which caused a broken nose), or Jarrell v. Travis, 2004-0117 (La.App. 1 Cir. 2/11/05), 906 So.2d 551 (insured punched the victim once, causing severe injuries), the eases relied on by the appellants. The jurispru-dentially required consideration of the totality of facts and circumstances, not merely the insured’s stated intent, coupled with our supreme court’s decision not to recognize coverage for “a severe injury of any sort” that follows an act intended to cause some type of severe injury, resolves the problem presented by egregious or criminal acts by an insured who subsequently denies that he intended the injuries that resulted. Breland, 608 So.2d at 986; see Yount, 627 So.2d at 152. As with the case of the arsonist in Great American Insurance Company, when the insured intended to cause severe or extreme injury or damage, he cannot reasonably |inexpect his liability insurer to pay for the damages excluded by the policy, that is, those “expected or intended by an insured,” or to compensate the insured for injury or damages he must have known could follow such extreme actions. Great American Insurance Company, 608 So.2d at 986.
For these reasons, we affirm the summary judgment dismissing Shelter from the suit. The costs of the appeal are assessed one half to plaintiffs-appellants, Ernie Wayne Feierabend, individually and as the executor of the Succession of Emmi-lee Gordon Feierabend, and Paula Antonia Gordon, and one-half to defendant-appellant, James Wesley Starns.
AFFIRMED.

. Shelter presented depositions to refute several of Mr. Starns' claims. On appeal, the appellants object to much of Shelter’s evidence as hearsay. However, the record contains no objections to submission of the evidence on the motion for summary judgment. *1198 Regardless of the validity of Shelter's evidence, for purposes of this review of a summary judgment, we relied on Mr. Starns’ version of the incident.

. In a judgment signed on December 12, 2005, the trial court sanctioned Mr. Starns for refusing to cooperate in discovery, and prohibited him from offering evidence at a trial on the matter. In this appeal of the May 1, 2006 summary judgment, the appellants raise a concern over whether the trial court granted the judgment in part based on the sanction. However, we note that the hearing on the motion for summary judgment at issue in this appeal was held before the sanction judgment. Nothing in the trial court's judgment or reasons for judgment show that sanctions were a basis for the holding. In addition, we reviewed the record de novo.