865 So.2d 213 (2004)
Gary SHAFFER and His Wife, Colleen Shaffer
v.
STEWART CONSTRUCTION COMPANY, INC., Marmac Corporation, d/b/a McDonough Marine Service International Construction Equipment, Inc., and ABC, DEF, and GHI Insurance Company.
No. 03-CA-971.
Court of Appeal of Louisiana, Fifth Circuit.
January 13, 2004.
*214 Michael G. Lemoine, Breaud & Lemoine, Lafayette, LA, for Defendant/Appellee, International Construction Equipment, Inc. and St. Paul Guardian Insurance Company.
Michael D. Sledge, Jennifer C. Babin, Saporito & Sledge, L.L.C., New Orleans, *215 LA, for Defendant/Appellant, Pacific Insurance Company.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY, and CLARENCE E. McMANUS.
THOMAS F. DALEY, Judge.
Pacific Insurance Company brings this appeal asking this Court to reverse several judgments, interlocutory and final, that found it had a duty to defend appellee, International Construction Equipment, Inc. (ICE), and related issues. We affirm the judgments.
The underlying facts of this case are undisputed. Stewart Construction (Stewart) was contracted to construct a mooring facility for a new casino barge on the Red River in the Shreveport/Bossier area. Plaintiff, Gary Shaffer, was Stewart's project superintendent. Pacific Insurance Company (Pacific), appellant, was Stewart's CGL carrier. In order to drive and extract pilings in the Red River in connection with this project, Stewart rented a Vibro-hammer from ICE on October 21, 1997. ICE was the manufacturer as well as the owner of the Vibro-hammer. The rental of the Vibro-hammer was governed by an October 21, 1997 Equipment Rental Agreement that contained certain indemnity and insurance requirements that are at issue in this appeal.
On April 30, 1998, the Vibro-hammer developed a hydraulic leak at the coupling/fitting that attached the hammer's large main hose to the power pack. Gary Shaffer telephoned ICE's home office in North Carolina and received instructions to repair the problem, which was done successfully. While repairing the leak, however, Gary Shaffer allegedly slipped and fell in the hydraulic oil that had leaked from the Vibro-hammer's hose, sustaining injuries.
On April 29, 1999, Gary Shaffer instituted a maritime suit against Stewart and McDonough Marine Services, the owner of the barge on which the accident happened. Additionally, Gary Shaffer sued ICE for both negligence and strict liability. The trial court later dismissed Gary Shaffer's strict liability claims, applying the amended versions of LSA-C.C. arts. 2317 and 2317.1. Gary Shaffer subsequently filed a Supplemental and Amending Petition asserting a claim against ICE under the Louisiana Products Liability Act.
Upon receipt of the lawsuit, ICE made demand upon Stewart and its insurance agent for defense and indemnity of ICE in this litigation pursuant to the October 21, 1997 Equipment Rental Agreement. ICE's demand had two parts; first, for Stewart to assume the defense and indemnity of ICE pursuant to Paragraph 8 of the Equipment Rental Agreement; and second, for Pacific to assume the defense and indemnity of ICE under the insurance provisions of Paragraph 12 of the Agreement, which ICE alleged required Pacific to name ICE as an additional insured under the CGL policy it had issued to Stewart.
Pacific refused to defend ICE, even under a reservation of rights, arguing that Paragraph 12 of the Equipment Rental Agreement did not require that ICE be named an additional insured under its CGL policy covering Stewart, but only required that ICE be named an additional insured under the all-risks equipment policy covering Stewart. ICE filed a Third Party Demand against Pacific, and then a Motion for Summary Judgment. The trial court ruled in favor of ICE in judgments dated November 8, 2001, and December 6, 2001, finding that ICE was an additional insured under Pacific's CGL policy, thus obligating Pacific to defend ICE in these proceedings, and ordering Pacific to reimburse *216 ICE's defense costs. Additionally, the trial court found Pacific arbitrary and capricious in its refusal to defend ICE and ordered penalties and attorney's fees in favor of ICE, in a judgment dated February 7, 2002.
Relevant to this appeal, Pacific sought this Court's supervisory review of the judgments of November 8, 2001, December 6, 2001, and February 7, 2002 in an Application for Writs, 02-C-205. On March 27, 2002, this Court denied the Writ Application, stating in pertinent part:[1]
"With regard to the trial court's ruling granting the Motion for Summary Judgment brought by International Construction Equipment, Inc. as to Pacific Insurance Company's duty to defend, we find no error in the trial court's ruling as all of plaintiff's claims against ICE are not unambiguously excluded by the subject policy. Further, on the showing made, we find no error in the trial court's ruling requiring Pacific to reimburse ICE for attorney's fees in the amount of $47,492.30. In addition, the trial court's award of penalties and attorney's fees are supported by La. R.S. 22:1220 and R.S. 22:658(B)(1). See, Credeur v. McCullough, 702 So.2d 985 (La.App. 3 Cir. 10/29/97).
The Supreme Court also denied writs. 2002-CC-1158 (June 14, 2002).
Pacific reimbursed ICE for the defense costs and attorney's fees as ordered. Thereafter, Pacific filed a Third Party Demand against ICE's CGL insurer, St. Paul Guardian Insurance Company (St.Paul), seeking whole, or in the alternative, partial reimbursement of defense costs and any indemnity amounts paid on behalf of ICE.[2] Pacific also paid $360,000.00 on behalf of ICE in full and final settlement of plaintiffs' claims against ICE. Pacific then filed a Motion for Summary Judgment on the issue of Other Insurance, arguing that St. Paul's policy's excess clause was mutually repugnant to Pacific's policy's pro-rata clause, thus obligating St. Paul to reimburse Pacific one-half of all defense costs and indemnity.
St. Paul filed its own Motion for Summary Judgment, arguing that St. Paul's excess clause trumped Pacific's pro-rata clause. On April 1, 2003, the trial court ruled in favor of St. Paul, denying Pacific's motion and granting St. Paul's, finding that St. Paul's excess clause rendered Pacific's policy primary regarding defense and indemnity obligations of ICE in this litigation. Pacific took a Writ Application to this Court on the denial of their Motion. This Court denied writs on May 27, 2003, with the following disposition:
"After careful consideration of the writ application, policy clauses in question, reasons for judgment and cases cited therein, we find the trial court did not err in its finding that Pacific is not entitled to judgment as a matter of law."
The last issue left was the incidental demand between Pacific and St. Paul as to who bore the responsibility for ICE's defense costs and settlement amounts paid to plaintiff, Gary Shaffer. St. Paul filed a Supplemental Cross-Motion for Summary Judgment to have this issue resolved and for the complete dismissal of Pacific's Third Party Demand. This Motion was heard on May 14, 2003. The trial court ruled in favor of St. Paul, finding that Pacific had the sole responsibility for the defense and indemnification of ICE in these proceedings. The trial court applied *217 the "sole negligence" exclusion in Pacific's policy, under which Pacific could avoid its indemnity obligation if it were found that plaintiff, Gary Shaffer's, accident were caused solely by the negligence of ICE. The trial court found "abundant" evidence that reasonable persons could conclude that at least some fault for the accident could be attributable to parties other than ICE. A final judgment to this effect was rendered on May 16, 2003, after which Pacific took this appeal.
On appeal, Pacific assigns as error the trial court's rulings in the judgments of November 8, 2001, December 6, 2001, February 7, 2002, April 1, 2003, and May 16, 2003. Specifically, Pacific argues the following Assignments of Error:
1) The trial court committed reversible legal error by ruling that ICE is an additional insured under Pacific's general liability insurance policy issued to Stewart as the named insured, because the plain language of Paragraph 12 of the delivery ticket does not require Stewart to name ICE as an additional insured under its CGL policy, but rather requires Stewart to name ICE as an additional insured and loss payee only on its all-risk equipment insurance policy.
2) The trial court committed reversible legal error by ruling that Shaffer's petition stated a potentially viable claim against ICE for which Pacific owed ICE a duty to defend. Pacific argues that as the manufacturer of the Vibro-hammer, its exclusive liability was pursuant to the Louisiana Products Liability Act, and at the time it filed its Motion for Summary Judgment on this issue, Shaffer's petition did not contain an LPLA claim.
3) The trial court committed reversible factual and legal error by ordering Pacific to reimburse ICE $47,492.30 in attorney's fees, because ICE did not incur those fees, they were incurred by St. Paul, ICE's CGL carrier. Additionally, ICE did not prove which fees are related to the defense of the main demand and which are related to pursuing coverage. ICE is not entitled to reimbursement of any attorney's fees incurred in the prosecution of its insurance coverage claim.
4) The trial court erred in finding Pacific arbitrary and capricious in refusing to defend ICE, and awarding $4,749.23 in penalties and $2,500.00 in additional attorney's fees. The trial court made no factual determination of how Pacific acted arbitrarily and capriciously in refusing to defend ICE, given that Pacific's position was based upon the exclusivity of the LPLA. Additionally, ICE failed to prove a loss resulting from Pacific's refusal to defend, because ICE's defense was funded by St. Paul until Pacific was ordered to reimburse the defense costs to ICE.
5) The trial court committed reversible legal error by ruling that St. Paul's "excess" other insurance provision prevails over Pacific's "pro-rata" other insurance provision.
6) The trial court committed reversible legal error by ruling that Pacific owes ICE exclusive insurance coverage for Shaffer's negligence and LPLA claims against ICE.
The first four Assignments of Error, concerning judgments entered November 8, 2001, December 6, 2001, and February 7, 2002, were reviewed by this Court in Writ No. 02-C-205, which was denied on March 27, 2002. Writs were also denied by the Supreme Court (2002-CC-1185, June 14, 2002). The Fifth Assignment of Error concerns the trial court's judgment *218 of April 1, 2003. Pacific took writs to this Court, which were denied (03-C-499, May 27, 2003), and were also denied by the Supreme Court (2003-CC-1729, October 10, 2003). The sixth Assignment of Error concerns the trial court's judgment of May 16, 2003, after which Pacific took this appeal.
Appellee ICE argues that law of the case prevents this Court from reconsidering the judgments of November 8, 2001, December 7, 2001, February 7, 2002, and April 1, 2003, since this Court denied Pacific's Writ Applications after considering the merits of the claims raised therein, and since Pacific, in its appellate brief, "merely regurgitates" the arguments it has previously made to this Court in those Writ Applications. Pacific claims in its appellate brief that this Court's previous writ denials did not address the substance of the issues raised, and therefore, the law of the case doctrine does not apply.
The law of the case principle is a discretionary guide which relates to (a) the binding force of a trial judge's ruling during the later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Louisiana Land and Exploration Co. v. Verdin, 95-2579, pp. 3-4 (La.App. 1 Cir.9/27/96); 681 So.2d 63, 65, writ denied, 96-2629 (La.12/13/96); 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997). It applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. Brumfield v. Dyson, 418 So.2d 21, 23 (La.App. 1 Cir.), writ denied, 422 So.2d 162 ([La.]1982). The reasons for the law of the case doctrine is to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Louisiana Land and Exploration Co. v. Verdin, 95-2579 at 4; 681 So.2d at 65.

Jones v. McDonald's Corp., 97-2287 (La.App. 1 Cir. 11/6/98), 723 So.2d 492, 494.
This Court has carefully reviewed the appellate record, the previous Writ Applications and dispositions of denial from this Court, and has noted the Supreme Court's denial of the Writ Applications. We find that in this case, the writ panels of this Court clearly considered the substance of the issues raised. We find no legal error in the trial court's rulings concerning Assignments of Error One and Two.
Concerning the First Assignment of Error, Pacific argues that under the following language of Paragraph 12 of the Equipment Rental Agreement, the trial court erred in finding that ICE was an additional insured under Stewart's CGL policy:
12. INSURANCELessee will provide ICE with evidence in a form satisfactory to ICE of a valid (i) general liability insurance policy and (ii) all-risks, equipment insurance policy covering the Lessee, including the interests of ICE as an additional insured and loss payee, as applicable, and providing at least a ten-day notice of cancellation. Such evidence shall be submitted prior to delivery of the Equipment.
Pacific argues that this language requires that ICE be named as an additional insured only under the all-risks, equipment insurance policy, and not on the CGL policy. ICE notes, on the other hand, LSA-C.C. arts. 2045-48, which govern the interpretation *219 of contracts, and argues that the language of Paragraph 12 is clear and explicit that ICE is required to be named an additional insured under both the CGL and all-risks equipment policies.
We find no error in the trial court's interpretation of this language as requiring ICE as an additional insured under both policies, including the CGL policy. The language is clear, explicit, and leads to no absurd consequences. Further, it was noted in the parties' briefs and at argument on February 7, 2002 that CGL policies do not have "loss payees" and all-risk equipment policies do not have "additional insureds." Thus, Pacific's position that Paragraph 12 required that ICE be named only on the all-risk policy renders meaningless the words "as applicable" found in that paragraph. Regarding the intent of the parties, John Stewart of Stewart Construction testified in deposition that Stewart Construction has entered into these types of contracts for at least ten years, and he understood that this language required him to have ICE named as an additional insured under the CGL policy, which Stewart Construction did.
In its Second Assignment of Error, Pacific argues that it was reversible legal error to find that Shaffer's petition stated some cause of action for which ICE might be liable. They argue that as manufacturer of the Vibro-hammer, Gary Shaffer's exclusive remedy was under the LPLA, which, at the time, was a cause of action not asserted in his petition. This Court, in the writ denial, found "no error in the trial court's ruling as all of plaintiff's claims against ICE are not unambiguously excluded by the subject policy."
ICE was the manufacturer of the Vibro-hammer; it was also the owner and lessor of the Vibro-hammer. Initially, plaintiff did not plead that ICE was the manufacturer; plaintiff specifically plead that ICE supplied, maintained, and had custody of the Vibro-hammer. As such, plaintiff stated a cause of action against ICE in negligence based upon LSA-C.C. arts. 2515 and 2316 stemming from ICE's ownership and leasing of the Vibro-hammer. The allegations of the petition did not unambiguously exclude coverage under Pacific's policy, of which ICE was an additional insured under Paragraph 12 of the ERA. We see no error in this regard.
Next, in its Third Assignment of Error, Pacific argues that the trial court committed reversible factual and legal error by ordering Pacific to reimburse ICE $47,492.30 in attorney's fees, because ICE did not incur those fees, they were incurred by St. Paul, ICE's CGL carrier. Additionally, Pacific argues that ICE did not prove which fees are related to the defense of the main demand and which are related to pursuing coverage, as ICE is not entitled to reimbursement of any attorney's fees incurred in the prosecution of its insurance coverage claim.
In its response to Writ Application 02-C-205, ICE noted that Pacific failed to present any evidence, at the hearing on its Motion for Summary Judgment that ICE did not pay for its defense costs. ICE notes that they made the demand upon Pacific for defense and indemnity in a demand letter sent to Pacific on July 2, 1999. On October 12, 2001, ICE filed its Cross-Claim and Third Party Demand against Pacific. In Paragraph 18 thereof, ICE specifically requested penalties and attorney's fees pursuant to LSA-R.S. 22:658 and 22:1220. Next, ICE filed its Motion for Summary Judgment on August 8, 2001, attaching its affidavit attesting that $47,492.30 was incurred in defense of Shaffer's claims through July 26, 2001. The hearing on this Motion was originally set for September 13, 2001, but was reset to October 16, 2001. From October 2000 *220 to October 2001, ICE argues that Pacific failed to propound any discovery to determine if ICE had incurred the defense costs directly or whether such costs were paid by another insurance company pursuant to a policy purchased directly by ICE. ICE also argued that the issue should be resolved between Pacific and St. Paul as to whose policy should pay, but ICE should not be denied its recovery from Pacific, based upon Pacific's clear obligation to defend ICE in this matter.
The trial court issued its judgment on November 8, 2001. Not until November 29, 2001, did Pacific send two Requests for Admission to ICE seeking information about who actually paid the defense costs Pacific was ordered to reimburse.[3] Pacific's Motion for Clarification and/or Amendment of the Judgment, filed on November 15, 2001, does not address this issue, though counsel did attempt to argue these new issues at the hearing on that motion on December 5, 2001. Counsel for ICE objected.
We find no legal error in the trial court's finding that Pacific owed reimbursement to ICE of the attorney's fees incurred in defending the Gary Shaffer suit. Nor do we find merit to Pacific's argument that the fees should have been divided between the defense and the coverage litigation. Generally, an insured is entitled to recover attorney fees associated with its defense of the underlying action, but not with its litigation of the coverage issue. Steptore v. Masco Const. Co., Inc., 93-2064 (La.8/18/94), 643 So.2d 1213. ICE's affidavit, in fact, does not delineate the fees, though the affiant does state therein that "[the affiant was] familiar with the fee and expense bills generated by Michael G. Lemoine, ... in connection with his defense of [ICE] in the matter entitled, "Gary Shaffer ...". (emphasis added) We find, as ICE notes, that Pacific did not timely contest the affidavit or attempt to conduct discovery regarding the division of those fees until long after the trial court rendered its judgment.
Fourth, Pacific appeals the trial court's finding that Pacific was arbitrary and capricious in failing to defend ICE. We find no error in this ruling. Gary Shaffer's Petition alleged the negligence of ICE based upon its ownership and custody of the Vibro-hammer, yet Pacific argued that there was no duty to defend ICE because as manufacturer of the Vibro-hammer, ICE could only be liable to Gary Shaffer under the LPLA, which Gary Shaffer's Petition did not plead. As this Court recently stated in Houghtaling v. Richardson, 01-208 (La.App. 5 Cir. 10/17/01), 800 So.2d 1012:
Generally, the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. Yount v. Maisano, supra[, 627 So.2d 148 (La.1993)]. The insurer's duty to defend suits brought against its insureds is determined by the allegations of the plaintiff's petition, and the insurer is obligated to defend the insured, unless the petition unambiguously excludes coverage. The allegations in the petition are to be construed liberally to determine whether they state grounds bringing the claims within the scope of the insurer's duty to defend. Assuming all the allegations of the petition to be true, if there would be coverage under the policy and also liability to the plaintiff, the insurer must defend the suit, regardless of the outcome of the suit. The duty to defend *221 arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. The duty to defend is determined solely from the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence. Yount v. Maisano, supra; KLL Consultants, Inc., supra[, 99-14 (La.App. 5 Cir. 6/1/99), 738 So.2d 691].
Pretermitting this issue was ICE's status as additional insured under the Pacific CGL policy based upon Paragraph 12 of the Equipment Rental Agreement, and Pacific's arguments against ICE's status. An insurer's actions are "arbitrary and capricious," for purposes of statutes imposing penalties on insurer for arbitrary and capricious actions, when its willful refusal of a claim is not based on a good faith defense, or is unreasonable or without probable cause. Wallace v. State Farm Mut. Auto. Ins. Co., 36,099 (La.App. 2 Cir. 6/14/02), 821 So.2d 704. Reviewing the record and evidence as a whole, we find no error in the trial court's apparent conclusion that Pacific's refusal to defend ICE was not based on a good faith defense.
We likewise find unfounded Pacific's reliance on its argument that products liability suits are not covered by its policy. At the time the Motions for Summary Judgment were filed on this issue, Gary Shaffer had not sued ICE in products liability, but sued ICE for negligence as per its status as owner/lessor of the Vibro-hammer. Pacific's position throughout has focused on ICE's status as manufacturer of the Vibro-hammer and ignored ICE's status as owner/lessor of the equipment. Given the broad duty to defend, which is larger than the issue of coverage, we find no error in the trial court's conclusion that Pacific's refusal to defend ICE was arbitrary and capricious.
In Assignment of Error No. Five, Pacific argues that the trial court erred in granting summary judgment in favor of St. Paul (and denying their own Cross Motion for Summary Judgment) finding that St. Paul's excess "other insurance" clause prevailed over Pacific's pro-rata "other insurance" clause.[4] Pacific argues that the trial court should have found Pacific's pro-rata and St. Paul's excess "other insurance" clauses mutually repugnant, as per Lamastus & Associates v. Gulf Insurance Company, 260 So.2d 83 and Penton v. Hotho, 601 So.2d 762 (La.App. 1 Cir.1992).
St. Paul contends that the trial court did not err in its ruling. They argue that the Lamb-Weston rule, which the Lamastus court followed, is a minority rule adopted only by the First and Fourth Circuits. St. Paul also argues that clauses in the St. Paul and Pacific policies are distinguishable from the clauses analyzed in Lamastus. They argue that the situation is more akin to the clauses analyzed by the Supreme Court in Juan v. Harris, 279 So.2d 187 (La.1973), and that the clauses in these two insurance policies are not mutually repugnant.
After reviewing the clauses in question in each policy and the case law argued by both parties, we conclude that these insurance clauses are governed by Juan v. Harris. In that case, the "excess" other insurance clause was not triggered merely by the existence of other valid and collectible insurance, but was triggered by the fulfillment of a specific condition. In our case, St. Paul's excess other insurance clause was triggered by the fulfillment of two conditions, that ICE was named as an additional insured under another policy (the Pacific policy), AND ICE's agreement that the St. Paul policy would be excess *222 coverage in this scenario. Pacific's clause and St. Paul's clause are not mutually repugnant because ICE is not left without coverage if effect is given to the St. Paul excess clause. The St. Paul policy, under these conditions, does not constitute valid and collectible "other insurance" within the meaning of the Pacific pro-rata provision, so there is, in fact, no conflict between the two. We also note the obvious difference between an "excess" and "pro-rata" clause. The "pro-rata" policy always contemplates paying first dollar coverage, either full, when no other valid and collectible insurance exists, or part, when it will share with the other valid and collectible insurance. The "excess" other insurance, however, pays first dollar coverage only in the absence of other valid and collectible insurance.
Lamastus is distinguishable, as is Penton v. Hotho, 601 So.2d 762 (La.App. 1 Cir.1992), another case relied upon by Pacific. In those cases, the excess provision was triggered merely by the existence of other valid and collectible insurance, unlike the instant case.
Pacific attempts to distinguish Juan v. Harris because that case involved automobile policies, a distinction we find without a difference. We note that Penton, upon which Pacific relies, concerned two medical malpractice liability policies, not CGL policies.
In Assignment of Error No. Six, Pacific argues that the trial court committed reversible legal error by ruling that Pacific owes ICE exclusive insurance coverage for Gary Shaffer's negligence and LPLA claims against ICE. In this assignment, Pacific argues that there is no coverage under their policy (as distinguished from the duty to defend arguments raised earlier) for the plaintiff's LPLA claim against ICE. They also argue that the scope of the coverage under the policy for ICE as "additional insured" is much narrower, as per endorsement G-109, than is afforded a "named insured," and that ICE is in fact not covered.
St. Paul argues that the trial court's judgment was correct because the Pacific policy affords coverage for Gary Shaffer's negligence claims. They also contend that another endorsement to the Pacific policy amends the definition of "named insured" to include those persons required to have coverage by contractual liability.
After reviewing the briefs and supporting documents identified therein, we see that both Pacific and St. Paul point to the same endorsement, G-109, to support their argument on the scope of the coverage available to ICE as an additional insured. St. Paul quotes only the part of Section (A) italicized by this court below; Pacific quotes the whole Section (A) and its subparts 1 and 2, emphasizing the part underlined below by this court:

(A) WHO IS AN INSURED (Section II) is amended to include as an insured any person, organization, trustee, estate or governmental entity to whom or to which you are obligated, by virtue of a written contract or agreement or by virtue of the issuance or existence of a permit, to provide insurance such as is afforded by this policy, but only with respect to liability arising out of:

(1) "Your work" for the additional insured(s) or for which a governmental entity has issued a permit, or
(2) Acts or omissions of the additional insured(s) in connection with their general supervision of "your work";
We agree with Pacific that the scope of coverage under this policy has been narrowed, by this endorsement, for ICE as an additional insured. The question then becomes whether the incident falls within these two conditions. The facts surrounding Gary Shaffer's injury are undisputed. *223 The hose developed a leak of hydraulic fluid; Stewart called ICE for repair instructions, which were carried out successfully by Stewart personnel. While repairing the leak, however, Gary Shaffer allegedly slipped and fell in the hydraulic oil that had leaked from the Vibro-hammer's hose, sustaining injuries.
After review of the facts of this case, we cannot agree with Pacific's position that it is undisputed that ICE performed "absolutely no work" on behalf of ICE, as per subsection (1) above. Specifically, Gary Shaffer, Stewart's employee, performed a repair upon the Vibro-hammer, during which he was injured. Paragraph 5 of the Equipment Rental Agreement addresses "Job Breakdowns" and the parties' relative responsibilities for repairs to the equipment. ICE was within its rights under Paragraph 5 to request the Lessee, Stewart, to make the required repairs to the Vibro-hammer, which Stewart did pursuant to instructions given by ICE. Performing the repairs constituted "Stewart's work" for the additional insured (ICE), as per Section (A)(1) of endorsement G-109. Thus, the occurrence is covered under Pacific's policy.
Next, we reach the issue of the "sole negligence" exclusion in the Pacific policy. This exclusion, also found in endorsement G-109, states, in pertinent part, that this insurance does not apply to "bodily injury" or "property damage" arising out of the sole negligence of a lessor of leased equipment. St. Paul's Cross Motion for Summary Judgment argued that summary judgment on this issue was appropriate because no genuine issue of material fact remained in this regard, and that the factual testimony clearly showed that no reasonable person could reach the conclusion that ICE was solely negligent in causing Gary Shaffer's accident. St. Paul argued that the deposition testimony of plaintiff himself, other Stewart witnesses, the documentary evidence in Stewart's log, and ICE's expert, established acts and omissions on the part of Stewart's employees that contributed to Gary Shaffer's injury.
Pacific argues that it was not the trial court's prerogative to make this ruling on summary judgment, and that the matter should have gone forward to the requested jury trial, as per the trial court's ruling of April 7, 2003. In otherwise opposing St. Paul's motion, however, Pacific did not produce any affidavits or other credible evidence in response to St. Paul's Cross Motion for Summary Judgment, as is required by LSA-C.C.P. art. 967, which would support Pacific's contention that ICE's negligence was the "sole" cause of the plaintiff's injury.
Our review of the record indicates that there remained no genuine issues of material fact undisputed. Therefore, the issue was properly within the prerogative of the trial court. The issue here is not one of apportionment of fault, as the matter had already been settled, but only would a rational trier of fact have found that ICE was solely negligent, under the undisputed facts? The issue at this point was not the extent of ICE's liability, but the extent of some fault of the other parties. After thorough review of the record, we find that the trial court did not err in finding that a rational trier of fact would have concluded that ICE was not solely negligent in causing plaintiff's injuries. The evidence clearly supports the finding of some fault on the other parties, including other Stewart employees and/or plaintiff himself.
In conclusion, after thorough review of each judgment appealed, we affirm the judgments of the trial court. We affirm the court's finding that ICE was an additional insured under Pacific's CGL policy issued to Stewart Construction. We affirm the trial court's finding that Pacific owed ICE the duty to defend this claim *224 after considering the allegations of plaintiff's Petition and the terms of the Pacific policy. We affirm the trial court's ruling that found Pacific arbitrary and capricious in its refusal to defend ICE. We affirm the judgment ordering Pacific to reimburse ICE for the costs of defense. We affirm the trial court's ruling that St. Paul's "excess" other insurance provision and Pacific's "pro-rata" other insurance provision are not mutually repugnant and also finding that St. Paul's excess clause rendered Pacific's policy primary regarding defense and indemnity obligations of ICE in this litigation. Last, we affirm the trial court's ruling that found that Pacific owes ICE exclusive insurance coverage for Gary Shaffer's negligence and LPLA claims against ICE. Costs of appeal are assessed against appellant.
AFFIRMED.
NOTES
[1] The Writ Application and ruling addressed, in addition, other judgments not at issue in this appeal.
[2] Plaintiff, Gary Shaffer, did not name St. Paul as a defendant.
[3] ICE refused to respond to these requests for admission on the basis that they were irrelevant and untimely. ICE successfully defended Pacific's Motion to Compel on this issue, heard on February 7, 2002.
[4] We find that this court's writ disposition in 03-C-499, as noted above, finding no error in the trial court's ruling that Pacific was not entitled to Summary Judgment as a matter of law on this issue, does not warrant the application of the law of the case doctrine.