JUDE G. GRAVOIS, Judge.
 

 |2From judgments in favor of third-party defendant Farmers Insurance Exchange (Farmers) finding no coverage under a homeowners’ policy and no duty to defend, third-party plaintiff Fred Hunter, Farmers’ insured, appeals. For the following reasons, we affirm.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 On March 27, 2007, Fred Hunter sold his residence at 3513 Metairie Heights in Metairie to plaintiffs Jamee and Arthur Brewster. On November 28, 2007, plaintiffs filed a Petition for Damages and Red-hibition against Mr. Hunter and his real estate agent Harriet Watts alleging that defendants intentionally and/or negligently
 
 [1]
 
 failed to disclose redhibitory defects in the house. The petition stated that during the first major rainstorm after the sale of the house,
 
 [2]
 
 large quantities of water intruded into the home around various windows. Plaintiffs alleged that Mr. Hunter and his agent knew about the defects around the -windows and failed to disclose the same prior to and at the closing of the sale of the home, and furthermore took affirmative fraudulent steps prior to the sale to conceal prior |sdamage from the defects.
 
 [3]
 
 The petition sought return of the purchase price, damages for repair, and mental anguish.
 

 Mr. Hunter filed a third party demand against Farmers, who had issued Mr. Hunter a homeowners’ policy on the subject residence, seeking both a defense and coverage. Farmers moved for summary judgment, arguing that there was no “occurrence” as defined under the policy, and hence there was no coverage and no duty to defend. Mr. Hunter subsequently filed a motion for partial summary judgment on the issue of Farmers’ duty to defend him in this suit.
 

 The trial court heard both motions together and rendered judgment in favor of Farmers on its motion for summary judgment, finding that there was no “occurrence” as defined in the policy, and hence no coverage, dismissing Farmers from the suit. The trial court also denied Mr. Hunter’s motion for partial summary judgment, finding that under the facts of this case, because coverage was unambiguously precluded, Farmers had no duty to defend Mr. Hunter. This appeal followed.
 

 APPELLATE REVIEW OF SUMMARY JUDGMENTS
 

 A motion for summary judgment should be granted when there exists no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966;
 
 Costly v.
 
 
 *915
 

 Batiste,
 
 01-496, p. 3 (La.App. 5 Cir. 11/14/01), 802 So.2d 752, 754. Appellate courts review summary judgments
 
 de novo
 
 using the same criteria applied by the district court in order to determine whether the grant of summary judgment was appropriate.
 
 Skidmore v. Initial DSI Transport, Inc.,
 
 99-1066, p. 2 (La.App. 5 Cir. 2/29/00), 757 So.2d 107, 108. 14Whether an insurance policy provides or precludes coverage, as a matter of law, can be resolved within the framework of a motion for summary judgment.
 
 Richardson v. Lott,
 
 03-189, p. 5 (La.App. 1 Cir. 11/7/03), 868 So.2d 64, 69, writ denied, 03-3324 (La.2/13/04), 867 So.2d 707.
 

 ASSIGNMENT OF ERROR NO. I
 

 In his first assignment of error, Mr. Hunter claims that the trial court erred in failing to consider “property damage” and “bodily injury” claims in ruling on the motions. He cites several cases for the position that homeowners’ insurance covers both property damage and bodily injury claims. He claims that the water intrusion into the home after they purchased it is “property damage” as defined in the policy. He also argues that mental anguish, as claimed in the petition, is also included in the definition of “bodily injury” under such insurance policies, and again cites several cases for that position.
 

 The trial court, however, found no coverage for the allegations in this petition under the policy because it found that the petition described no “occurrence” as defined in the policy. The policy definitions state:
 

 5. “Occurrence” means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
 

 a. “Bodily injury”, or
 

 b. “Property damage.”
 

 Under the section entitled “Liability Coverages,” the policy states:
 

 If a claim is made or a suit is brought against an “insured” for damages because of “bodily injury” or “property damage” caused by an “occurrence” to which this coverage applies, we will:
 

 1. Pay up to our limit of liability for the damages for which the “insured” is legally liable....
 

 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. ...
 

 | ^Accordingly, for the policy to afford coverage to Mr. Hunter, there must have been a suit brought against the insured, Mr. Hunter, for “property damage” or “bodily injury” caused by an “occurrence” as defined in the policy.
 

 In their Petition, the plaintiffs, Mr. and Mrs. Brewster, state that the defendants are liable for the following acts:
 

 Fred Hunter and Harriet Watts both failed in their duty to disclose latent material defects per the Contract by failing to list material defects in the disclosures and taking affirmative, fraudulent steps to conceal prior damage from the defects.
 
 [4]
 

 Further:
 

 The intentional/fraudulent concealment by Fred Hunter and Harriet Watts of certain latent material defects, along with those defects, were the cause in fact of the damages suffered by Plaintiffs.
 
 [5]
 

 Louisiana courts have found that a purchaser’s claims for damages caused by a homeowners’ failure to disclose redhibitory defects are not covered by homeowners’
 
 *916
 
 insurance policies. In
 
 Lawyer v. Kountz,
 
 97-2701, (La.App. 4 Cir. 7/29/98), 716 So.2d 493, the purchasers of a house with redhi-bitory defects (undisclosed termite damage and drain problems) brought suit against the vendor’s succession and other legatees to recover damages (return of the purchase price, costs of repair, damages for emotional distress) associated with the seller’s failure to disclose the defects. A third party demand was filed against Metropolitan, the insurer who issued a policy to the homeowner on the home.
 
 [6]
 
 Metropolitan’s policy language defining “occurrence” is identical to the policy language in Farmers’ policy.
 

 Recognizing that it was a case of first impression, the court of appeal found that the petition described no “occurrence” as defined by the policy:
 

 |fiThe third party claim brought by defendants against the insurers in this case is based on plaintiffs claims of breach of warranty in selling the property with hidden defects and the alleged misrepresentation of the defendants during the act of sale of the residential property. By the very nature of the lawsuit, plaintiff is seeking a remedy based on the sale of the subject property. An occurrence is defined as an “accident” in both the Metropolitan policy and the State Farm policy. The basis for the demands against defendants is the sale of the property, and we fail to consider the sale of residential property to be an “accident.” We find that the trial court was clearly wrong in determining that the termite damage was the “occurrence” which established coverage for plaintiffs claims. The defects in the property which allegedly existed prior to the basis of plaintiffs suit (the sale) cannot be considered an “occurrence” sufficient to trigger coverage for plaintiffs demands under the express terms of the homeowner’s policies. (Citations omitted.)
 

 Lawyer v. Kountz, supra,
 
 716 So.2d at 497. The court further found that damages alleged in that case did not constitute “property damage” as defined in the policy:
 

 The misrepresentation alleged in plaintiffs suit did not cause the termite (property) damages, rather, the alleged misrepresentation occurred during the sale of the property and after the termite damage had already occurred. The damages suffered by Ms. Lawyer as a result of her purchase of the property and defendants’ alleged actions in concealing defects in the property therefore do not constitute “property damage” within the meaning of the insurance policies. Rather, any damages suffered by plaintiff are of a pecuniary nature— damages due to the diminished value of a home infested with termites and in need of drain line replacement. Ms. Lawyer’s claims sound in negligent and intentional misrepresentation, which claims by their very nature are not for “property damage” and therefore do not fall within the scope of coverage afforded by the Metropolitan or State Farm policy.
 

 Lawyer v. Kountz, supra,
 
 716 So.2d at 498.
 

 Similarly, in
 
 Harding v. Wang,
 
 98-1865 (La.App. 4 Cir. 2/3/99), 729 So.2d 9, the court, relying on
 
 Lawyer,
 
 found no coverage under a homeowners’ policy for the sellers’ failure to disclose termite damage to the buyer of the home, ruling that the failure to disclose the damage was not an “occurrence” as defined under the homeowners’ policy, and that the termite dam
 
 *917
 
 age was not “property damage” as defined in the policy.
 

 |7In this case, Mr. Hunter attempts to distinguish
 
 Lawyer
 
 on the basis that the plaintiffs in
 
 Lawyer
 
 alleged that the seller owned the property at the time
 
 all
 
 damage occurred, that the damage existed
 
 at the time of the sale,
 
 versus the plaintiffs’ claim here of loss of use of the home
 
 after the sale.
 
 We find that it is of no consequence, however, whether the damages alleged by plaintiffs in their petition occurred before or after the closing of the sale of the home. In either case, the allegations in the petition are clear that the plaintiffs in the case at bar, like the plaintiffs in
 
 Lawyer,
 
 seek damages caused by Mr. Hunter’s failure to disclose the defects in the house, which clearly does not constitute an “occurrence” under the Farmers policy. Contrary to Mr. Hunter’s assertions, we find that
 
 Lawyer
 
 and
 
 Harding
 
 are indistinguishable from the case at bar in all pertinent respects.
 

 Mr. Hunter cites
 
 Stewart Interior Contractors v. MetalPro Industries,
 
 07-0251 (La.App. 4 Cir. 10/10/07), 969 So.2d 653, for the position that courts have rejected the proposition that redhibition claims can never constitute property damage under a “policy.”
 
 [7]
 
 The “policy” in that case, however, was a commercial general liability policy, not a homeowners’ policy. Further, in that case, the plaintiff, Stewart, had contracted with the third party plaintiff, MetalPro, for MetalPro to manufacture, fabricate, and deliver steel studs to the construction site to be used by Stewart in constructing a building, which studs were later found to be defective. Factually, there are very few similarities between the
 
 Stewart
 
 case and the instant one.
 

 Mr. Hunter cites other cases
 
 [8]
 
 that are all distinguishable from the case at bar on the basis that they were suits by homeowners against the builders or 18builders/developers of the homes who sold them their homes, for structural defects in the homes, and coverage was sought under various commercial general liability policies issued to the builders/developers.
 

 Mr. Hunter also argues in brief that the plaintiffs make claims for physical injury to the house and their mental anguish after they took possession, and loss of use, as a result of the negligence of Mr. Hunter. Clearly, however, plaintiffs do not allege that Mr. Hunter caused the physical damage to the house. The allegations in the petition clearly seek damages for Mr. Hunter’s alleged
 
 failure to disclose
 
 the defects in the house prior to and at the time of the act of sale, and such factual allegations do not constitute an “occurrence” under the subject policy.
 

 For the above reasons, Mr. Hunter’s first assignment of error is without merit.
 

 ASSIGNMENT OF ERROR NO. 2
 

 In his second assignment of error, Mr. Hunter argues that the trial court erred in going beyond the pleadings and the policy in ruling on the duty to defend issue. Specifically, he argues that Farmers, in its motion for summary judgment, ignored the claims for mental anguish and stated in a reply memo that the mental anguish occurred after the policy was can-celled. Mr. Hunter claims that Farmers failed to assert in its answer the defense
 
 *918
 
 that the policy was allegedly cancelled before the damages occurred; that Farmers failed to submit competent evidence as to when its policy was cancelled; that Farmers contends that a policy can be cancelled retroactively to “uncover” existing claims; and that Farmers’ approach is in derogation to longstanding jurisprudence on when a duty to defend arises.
 

 Generally, an insurer’s obligation to defend suits against its insured is broader than its liability for damage claims.
 
 Prestenbach v. Badeaux,
 
 03-809, p. 3 19(La.App. 5 Cir. 12/30/03), 865 So.2d 180, 182;
 
 Yount v. Maisano,
 
 627 So.2d 148, 153 (La.1993). Within this context, the insurer’s duty to defend suits brought against its insured is determined by the allegations of the plaintiffs petition, and the insurer is obligated to defend the insured, unless the petition unambiguously excludes coverage. The allegations in the petition are to be construed liberally to determine whether they state grounds bringing the claims within the scope of the insurer’s duty to defend. Assuming all the allegations of the petition to be true, if there would be coverage under the policy and also liability to the plaintiff, the insurer must defend this suit, regardless of the outcome of the suit.
 

 The duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. The duty to defend is determined solely from the plaintiffs pleadings and the face of the policy, without consideration of extraneous evidence.
 
 Prestenbach v. Badeaux, supra; Audubon Trace Condominium Ass’n v. Brignac-Derbes, Inc.,
 
 03-746, p. 5 (La.App. 5 Cir. 11/25/03), 862 So.2d 157, 159, writ denied, 03-3483 (La.3/12/04), 869 So.2d 822;
 
 Yount v. Maisano, supra.
 

 Though it heard argument on the cancellation issue, the trial court did not make any finding, in its written reasons or its ruling from the bench, regarding the pokey’s cancellation or evidence thereof.
 

 We find that this assignment of error is without merit. The portions of the petition quoted above, as well as the remaining allegations in the petition, considered in light of the policy’s terms, clearly show that there was no “occurrence” under the policy and hence no coverage under the policy. The trial court found, as do we, that Farmers’ Motion for Summary Judgment was properly granted and Mr. Hunter’s motion properly denied on the basis that the allegations | inin the petition unambiguously excluded coverage under the policy. As such, Farmers had no duty to defend Mr. Hunter in this case.
 

 ASSIGNMENT OF ERROR NO. 3
 

 In his third assignment of error, Mr. Hunter argues that the trial court erred in considering incompetent evidence offered by Farmers on the motions for summary judgment. Specifically, he argues that Farmers failed to submit a certified copy of its policy. Mr. Hunter argues that it was Farmers’ burden to show the applicability of any exclusions or limitations on coverage.
 

 In
 
 Ledbetter v. Concord General Corp.,
 
 95-0809, pp. 3-4 (La.1/6/96), 665 So.2d 1166, 1169, judgment amended, 95-0809 (La.4/18/96), 671 So.2d 915, the Supreme Court set forth the following legal axioms concerning the interpretation of insurance policies:
 

 An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. The parties’ intent, as reflected by the words of the policy, determine the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. If the policy wording at
 
 *919
 
 issue is clear and expresses the intent of the parties, the agreement must be enforced as written.
 

 Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. However, the rule of strict construction does not “authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.” (Citations omitted.)
 

 While the insurer has the burden of proof of showing policy limits or exclusions, it is the insured who bears the burden of proving the existence of the policy and coverage. When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the InPolicy’s terms.
 
 Mateu v. State Farm Mut. Auto. Ins. Co.,
 
 08-1208 (La.App. 5 Cir. 4/28/09), 13 So.3d 196.
 

 Farmers did not rely upon an alleged exclusion or limitation to coverage. As such, as the party asserting coverage, Mr. Hunter had the burden of proving both the existence of the policy and coverage. Mr. Hunter has failed in this regard. Furthermore, Farmers did attach a certified copy of the policy to its Supplemental Opposition to Mr. Hunter’s Motion for Partial Summary Judgment, filed in the trial court on July 21, 2009. The appellate record was duly supplemented with these exhibits. As such, the exclusions and limitations contained in the policy were part of the record. This assignment of error is without merit.
 

 ASSIGNMENT OF ERROR NO. 4
 

 In his final assignment of error, Mr. Hunter argues that issues of fact exist regarding an alleged “intentional injury.” As noted above, the trial court ruled that there was no “occurrence” under the policy, a judgment that this court affirms. Accordingly, it is of no moment whether Mr. Hunter’s failure to disclose the redhi-bitory defects in the house was negligent or intentional, as neither scenario constitutes an “occurrence” under the policy and hence there is no coverage. This assignment of error is without merit.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the judgments of the trial court in favor of third party defendant Farmers Insurance Exchange.
 

 AFFIRMED.
 

 [1]
 

 . The allegations of negligent failure to disclose are found in the first amending petition.
 

 [2]
 

 . Though the petition does not give the date of this rainstorm, the record indicates that it was sometime in May of 2007.
 

 [3]
 

 .The petition describes with particularity defects in the original construction around the windows. The petition claims that the windows and sheetrock around them had obviously been repaired/replaced since the initial construction.
 

 [4]
 

 . Paragraph 25 of the original petition.
 

 [5]
 

 . Paragraph 31 of the original petition.
 

 [6]
 

 . Third party demands were also filed against the other defendants' homeowners’ insurers, including State Farm.
 

 [7]
 

 . Mr. Hunter asserted in brief that the trial court found that the "mere mention” of redhi-bition in the petition barred coverage under the policy.
 

 [8]
 

 .
 
 Korossy v. Sunrise Homes, Inc.,
 
 94-473 (La.App. 5 Cir. 3/15/95), 653 So.2d 1215;
 
 Oxner v. Montgomery,
 
 34,727 (La.App. 2 Cir. 8/1/01), 794 So.2d 86;
 
 Rando v. Top Notch Properties, LLC,
 
 03-1800 (La.App. 4 Cir. 6/2/04), 879 So.2d 821.